Frank T. PERANO, Appellant

v.

ORD SEWER AUTHORITY.

Commonwealth Court of Pennsylvania.

Argued June 4, 2012.

Decided June 27, 2012.

Daniel F. Schranghamer, Williamsport, for appellant.

Winifred H. Jones–Wenger, Philipsburg, for appellee.

BEFORE: LEADBETTER, Judge, and COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COVEY.

Frank T. Perano (Perano) appeals from the Court of Common Pleas of Clearfield County's (trial court) July 18, 2011 order granting in part Perano's Motion for Reconsideration of the trial court's June 21, 2011 order. The issues before this Court

are whether the trial court erred by holding that: (1) ORD Sewer Authority (ORD)[1] provided Perano proper notice to connect to the sewer system; (2) Perano was required to pay sewer fees to ORD, even though he was not connected to the sewer system; (3) ORD had authority to issue a water service termination notice to Perano; (4) Perano was required to provide a list of tenants to ORD; and, (5) ORD's alleged unlawful taking of Perano's property did not afford Perano a defense to the instant action. We affirm.

Perano owns Frenchtown Mobile Park (Frenchtown) in Decatur Township (Township). Frenchtown utilizes its own on-lot sewage treatment system. On December 14, 2007, ORD sent Perano a notice, by regular mail, to connect to ORD's sewer system. The letter was sent to all property owners required to connect to the system. On September 9, 2008, ORD sent a second letter to Perano by regular mail. On June 18, 2009, ORD's solicitor sent Perano an "Official Notice to Connect," by certified mail, which included a copy of Township Ordinance No. 28 (Ordinance) and one amendment thereto, but did not include all amendments to the Ordinance. On March 5, 2010, ORD sent Perano a letter notifying him that due to his overdue balance of unpaid sewage collection bills, ORD would terminate water service to Frenchtown on or about April 1, 2010. By certified letter dated April 14, 2010, ORD notified Perano that at any time after 37 days from receipt of the letter, water service to Frenchtown would be terminated.

On April 21, 2010, Perano filed a petition pursuant to Section 3(a)(3) of the Utility Service Tenants Rights Act[2] (USTRA), 68 P.S. § 399.3(a)(3), challenging the proposed water service termination. ORD responded that the termination was authorized due to Perano's failure to connect Frenchtown to the public sewer system and his failure to pay for sewage services. A non-jury trial was held on April 28, 2011. On June 21, 2011, the trial court issued its opinion and order holding that ORD was authorized to assess charges for sewer service, even though Frenchtown was not connected to the sewer system. The trial court also held that as of June 18, 2009, Perano received effective notice to connect to the system, notwithstanding that ORD sent the notice rather than the Township, and that it was sent by certified mail rather than registered mail. The trial court further found that ORD did have authority to issue the water shut-off notice. Finally, noting that another civil action was pending regarding Perano's claim that his property was unlawfully taken in violation of the Eminent Domain Code[3] and Pennsylvania Constitution, the trial court refused to find that Perano could avoid responsibility for sewage fees based on these allegations.

■ On July 5, 2011, Perano filed a motion for reconsideration with the trial court. On July 18, 2011, the trial court

---

1. ORD is a joint municipal authority created under the Municipality Authorities Act, Act of June 19, 2001, P.L. 287, No. 22 (Act 22 of 2001), *as amended* by the Act of December 17, 2001, P.L. 926, No. 110 (Act 110 of 2001) and the Act of December 30, 2003, P.L. 404, No. 57 (Act 57), codified at 53 Pa.C.S. §§ 5601–5623.

2. Act of November 26, 1978, P.L. 1255, 68 P.S. §§ 399.1–399.18.

3. ORD filed its declaration of taking under the former Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended, formerly,* 26 P.S. §§ 1–101–1–903, repealed by section 5 of the Act of May 4, 2006, P.L. 112, and replaced by the consolidated Eminent Domain Code, 26 Pa.C.S. §§ 101–1106.

issued an order granting that part of Perano's motion alleging that the June 2009 Official Notice to Connect contained an incorrect amount due and was, thus, invalid.[4] The order rescinded the trial court's June 21, 2011 order, but restated the validity of the trial court's opinion that ORD could lawfully assess charges against Perano even in the absence of his use of the sewer system; that notice to Perano to connect to the system was valid; and, that ORD was authorized to issue a water shut-off notice. The order also required Perano to provide ORD with a list of Frenchtown's residents. Perano appealed to this Court.[5]

■ Perano first argues that the trial court erroneously found the June 18, 2009 notice to connect to be effective. Perano asserts that the notice to connect was defective in that it was not served in person or by registered mail by the Township, and did not include all amendments to Ordinance No. 28. We disagree.

Section 502(a) of The Second Class Township Code[6] provides in relevant part:

The board of supervisors may by ordinance require adjoining and adjacent property owners to connect with and use the sanitary sewer system, whether constructed by the township or a municipality authority or a joint sanitary sewer board. . . . If any owner of property adjoining or adjacent to or whose principal building is within one hundred and fifty feet from the sanitary sewer fails to connect with and use the sanitary sewer for a period of sixty days after notice to do so has been served by the board of supervisors, **either by personal service or by registered mail,** the board of supervisors or their agents may enter the property and construct the connection.

53 P.S. § 67502(a) (emphasis added).

Consistent with Section 502(a) of The Second Class Township Code, Section 2.01 of the Ordinance states in pertinent part:

The Owner of any Improved Property accessible to and whose principal building within 150 feet from the Sewer System shall connect such Improved Property with and shall use such Sewer System, in such manner as the Township may require, within 60 days after notice to such Owner from the Township to make such connection. . . .

Reproduced Record (R.R.) at 124a. Further, Section 2.06 of the Ordinance provides:

The notice by the Township to make a connection to a Sewer, referred to in Section 2.01, shall consist of a copy of this Ordinance, including any amendments and/or supplements at the time in effect, or a summary of each Section hereof, and a written or printed document requiring the connection in accordance with the provisions of this Ordinance and specifying that such connection shall be made within 60

---

4. The June 18, 2009 notice contains no reference to an overdue amount. It appears that the trial court was referring to the April 14, 2010, "Notice of Water Termination" that listed an overdue amount of $22,395.33. The trial court's order further states that "in order to proceed with termination of water services, ORD shall be required to reissue a new notice with the correct amount due consistent with the Water Services Act, [Act of April 14, 2006, P.L. 85, 53 P.S. §§ 3102.101–3102.507], [US-TRA] and other applicable laws." Trial Ct. July 18, 2011 Order at 1.

5. This Court's standard of review is *de novo* when considering questions of law. *Hanisco v. Twp. of Warminster & Solid Waste Servs.*, 41 A.3d 116 (Pa.Cmwlth.2012). In reviewing questions of law, the scope of review is plenary, as the reviewing court may examine the entire contents of the record. *Id.*

6. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701.

days from the date such notice is given. Such notice may be given at any time after a Sewer is in place which can receive and convey Sanitary Sewage and Industrial Wastes for treatment and disposal from the particular Improved Property. Such notice shall be served upon the Owner either by personal service or registered mail **or by such other methods as at the time may be provided by law.**

R.R. at 125a (emphasis added). Thus, the relevant sections of the Ordinance closely track Section 502(a) of The Second Class Township Code.

■ The Pennsylvania Supreme Court has noted that "[w]hile the Statutory Construction Act is not expressly applicable to the construction of local ordinances, the principles contained therein are nevertheless useful. The objective of statutory construction is to determine the legislative intent." *Phila. Eagles v. City of Phila.*, 573 Pa. 189, 219 n. 31, 823 A.2d 108, 127 n. 31 (2003). In *Kobylski v. Milk Marketing Board*, 101 Pa.Cmwlth. 155, 516 A.2d 75 (1986), *overturned on other grounds by Slawek v. State Board of Medical Education and Licensure*, 526 Pa. 316, 586 A.2d 362 (1991), where a notice was sent by certified mail rather than registered mail as required by the relevant statute, this Court acknowledged:

> Section 1991 of the Statutory Construction Act of 1972, *as amended,* 1 Pa.C.S. § 1991 (1986) states that registered mail '[w]hen used in any statute finally enacted before or after September 1, 1937, includes certified mail.' Therefore, the manner of service, certified mail, is not in contradiction of the statutory requirement.

*Id.,* 516 A.2d at 77. In the instant matter, we similarly conclude that certified mail satisfied the service requirement.

■ We also reject Perano's argument that notice was defective because it was made by ORD rather than the Township. Perano asserts that Section 502(a) of The Second Class Township Code requires the Township's board of supervisors to provide notice to connect to a sewer system. Perano argues that nothing in the Municipality Authorities Act (MAA) authorizes a municipal authority to provide the notice required in Section 502(a) of The Second Class Township Code. However, the June 13, 2006 amendment to the Ordinance specifically acknowledges that the sewer system will be "constructed and operated by ... ORD which shall provide services to certain portions of the Township." R.R. at 147a. Clearly, in such circumstances, ORD would be acting as an agent of the Township and therefore, authorized to enforce a mandatory connection requirement. *Greenfield Twp. Mun. Auth. v. D.R. Burket Trust,* 959 A.2d 522 (Pa. Cmwlth.2008). Thus, in the instant matter, the lack of explicit authorization in the MAA did not prevent ORD from acting as the Township's agent for purposes of notifying Perano.

Perano's argument that the connection notice was ineffective because it did not include all amendments to the Ordinance also fails. It is clear that Perano was put on notice that the Ordinance required him to connect to the sewer system. It is undisputed that the June 18, 2009 "Official Notice to Connect," included a copy of the Ordinance and a June 13, 2006 amendment to the Ordinance. Although two amendments, dated January 13, 1998 and January 11, 2000, were not included with the notice, it appears that the January 11, 2000 amendment was replaced by the June 13, 2006 amendment which was enclosed with the notice. Further, the two missing amendments do not contain information relevant to Perano's obligation to connect. Accordingly, we hold that the omission of

the two amendments is *de minimis.* Therefore, the trial court properly found that valid notice to connect was sent to Perano.

Perano next argues that the trial court erred when it held that ORD may assess charges for a sewer system to which Perano has never been connected and consequently has never used. Perano does not challenge the municipality's authority to require him to connect to the sewer system. Further, he does not assert that Section 502(a) of The Second Class Township Code (authorizing a township to require connection to the sewer system), or Section 2.01 of the Ordinance (requiring connection to the sewer system) are unconstitutional or otherwise invalid. Rather, Perano asserts that based upon the Pennsylvania Supreme Court case of *Hamilton's Appeal,* 340 Pa. 17, 16 A.2d 32 (1940), sewer fees must be based upon use. Therefore, since he did not use the sewer system, he should not have been assessed charges. We disagree.

■ In *Hamilton's Appeal,* the Pennsylvania Supreme Court addressed a challenge to a City of Philadelphia (City) ordinance that:

imposed a charge 'upon each lot or parcel of land, building or premises having any connection with or being available for connection with the sewer system of the City or otherwise discharging sewage, industrial waste, water or other liquids or substances, either directly or indirectly, into the said sewer system ... at a rate equal to forty (40) cents for each one hundred (100) dollars of assessed valuation of such lot or parcel of land, building or premises,' with a proviso that the rate for charitable institutions and public and private schools shall be ten cents for each one hundred dollars of assessed valuation. The charge thus provided for is designated 'sewer rental' and is purportedly imposed pursuant to the provisions of the ... 'Sewer Rental Act,' whereby municipalities are empowered to provide for the imposition and collection 'of an annual rental or charge for the use' of sewer facilities, said annual rental to be 'apportioned equitably among the properties served' and to be a lien on such properties.

*Id.,* 340 Pa. at 19–20, 16 A.2d at 33–34. The Court first noted that "[s]ewers, like water systems, are owned and operated by municipalities in their proprietary capacity, not governmentally. The construction, operation, or maintenance of sewer systems, water systems and gas systems by a municipal corporation is in the nature of a private enterprise." *Id.,* 340 Pa. at 20, 16 A.2d at 34 (citations and quotation marks omitted). The Supreme Court acknowledged the City's right to collect fees for the sewer services, however, it noted:

by the ordinance of 1940, 'the City is requiring payment to be made not only by those who have availed themselves of the right to connect with the sewer but by all those to whom it is made available by its presence.' By the terms of the ordinance the charge is made applicable not only to properties actually connected with and accommodated by the sewer system, but as well, inter alia, to (1) vacant lots not connected to the sewer system but abutting thereon, (2) vacant lots connected to the sewer system but not using it, (3) vacant buildings not connected with the sewer system but abutting on it, (4) vacant buildings connected with the sewer system but not actually using it, (5) occupied buildings not connected to the sewer system but abutting thereon, and (6) as construed by the court below, to all properties directly or indirectly discharging surface water into the storm sewer system, regardless of whether they are connected

with or are available for connection with the sanitary sewer system.

*Id.*, 340 Pa. at 21–22, 16 A.2d at 34–35. Based upon these facts, the Supreme Court concluded:

[b]eing imposed without any regard whatever to the extent or value of the use made of the sewer facilities, or whether any use is made, the charge provided for by the ordinance is, in legal effect, undoubtedly a tax, and the obligation to pay it could be created only by the City's exercise of its general taxing power.

*Id.*, 340 Pa. at 24, 16 A.2d at 35.

In the instant matter, there is no question that ORD may charge for sewer services provided. Section 5607(a) of the MAA, provides that a municipal authority:

shall be for the purposes of financing working capital; acquiring, holding, constructing, financing, improving, maintaining and operating, owning or leasing, either in the capacity of lessor or lessee, projects of the following kind and character and providing financing for insurance reserves:

. . . .

(5) Sewers, sewer systems or parts thereof.

53 Pa.C.S. § 5607(a). Further, a municipal authority, "may exercise **all powers necessary or convenient** for the carrying

out of the purposes set forth in [Section 5607 of the MAA]." 53 Pa.C.S. § 5607(d) (emphasis added). These powers include, but are not limited to, the ability to:

fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties. . . .

53 Pa.C.S. § 5607(d)(9).

■ Thus, the question before this Court is whether ORD may impose sewer fees upon the owner of property *who is required by the Ordinance to connect to the sewer system,* if, in violation of the Ordinance, the property owner fails to connect. This Court's decisions in *Pelton v. Pine Creek Municipal Authority,* 85 Pa. Cmwlth. 187, 481 A.2d 385 (1984), *Marnickas v. Tremont Municipal Authority,* 67 Pa.Cmwlth. 117, 445 A.2d 1383 (1982), and *Coudriet v. Township of Benzinger,* 49 Pa. Cmwlth. 275, 411 A.2d 846 (1980), hold that landowners may be assessed sewer fees even if they have not connected to the sewer system. Perano argues that these cases were wrongly decided because they disregarded the holding in *Hamilton's Appeal,* and that this Court should overrule them.[7] We find that *Hamilton's Appeal*

---

7. In *Pelton,* this Court noted:

We recently addressed this same issue in *Marnickas* . . . where we held that landowners who are assessed sewer fees pursuant to Section 4 of the Act 'must pay the sewer rentals even though [they have] not tapped into the sewer system,' *Id.* at 120, 445 A.2d at 1385, and we find no merit in Appellants' contention, advanced in their brief to this Court, that our decision in *Marnickas* is contrary to our Supreme Court's decision in *Hamilton's Appeal* . . . .

In *Hamilton's Appeal,* our Supreme Court concluded that a municipality's operation

of a sewer system was an action within the municipality's proprietary, and not governmental capacity, and hence that a municipality could not finance the operation of its sewer system through a general tax. The court then concluded that a sewer charge imposed by the City of Philadelphia (City) was a tax since it was assessed against properties not connected to the City's sewer system, and in this regard, noting that the charge had purportedly been imposed pursuant to the provisions of Section 1 of [the Sewer Act] concluded that '[h]aving due regard for the ordinary meaning of the un-

does not require the result sought by Perano.

■ In the instant matter, *the Ordinance required* Perano to connect to the sewer system. The ordinance in *Hamilton's Appeal did not require* adjacent properties to **connect** to the sewer system.[8] Instead, the *Hamilton's Appeal* ordinance required payments to be made by "premises having any connection with or being available for connection with the sewer system of the City or otherwise discharging sewage, industrial waste, water or other liquids or substances, either directly or indirectly, into the said sewer system...." *Id.*, 340 Pa. at 19, 16 A.2d at 33. Unlike the facts in *Hamilton's Appeal*, had Perano connected to the sewer system *as he was required to do*, there is no question that he would be required to pay the very same sewer fees he now disputes. As this Court in *Coudriet* noted:

> to allow individual property owners to elect not to tap into a sewer system accessible to it would circumvent the statutory purpose behind the imposition of sewer rentals and undermine the financial soundness of a municipality's sewer system. The rental charges are utilized to meet many fixed costs incurred by the township; costs such as operation expenses, maintenance, repair, inspection and depreciation which are

incurred whether or not a particular individual is tapped into the sewer system. *Id.*, 411 A.2d at 848.

■ In regard to the rates charged to Perano, this Court has stated, "sewage rates must have a reasonable relation to the value of the service rendered *either as actually consumed or as readily available for use.* In order to be assessed sewer rental fees, an individual sought to be charged must obtain 'some' benefit." *Ack v. Carroll Twp. Auth.*, 661 A.2d 514, 517 (Pa.Cmwlth.1995) (citation omitted). There is a rebuttable presumption that an adjacent property is benefitted by the construction of a sanitary sewer. *Palmer Twp. Mun. Sewer Auth. v. Witty*, 479 Pa. 240, 388 A.2d 306 (1978). Perano has not provided sufficient evidence to rebut that presumption. The sewer system was readily available for Perano's use, despite his failure to adhere to the Ordinance and connect. ORD values its sewer services at $46.00 per equivalent residential unit, and charges accordingly. Thus, we find that Perano was properly assessed sewer fees.

■ Perano next argues that, pursuant to the Water Services Act (WSA)[9] and the USTRA, only a water utility may issue a water shut-off notice. Perano further argues that nothing in either WSA or USTRA authorizes the water utility to designate the municipality or municipal authority as its utility's agent in claiming

ambiguous language used in the Act, it would appear solely to charges based upon actual user [sic] of the sewer system...." *Id.* at 22, 16 A.2d at 35. Even if we were to assume, however, that the Supreme Court's reasoning that a municipality's operation of a sewer system is solely an action within its proprietary capacity is still valid in light of the many environmental laws which have subsequently been enacted recognizing the importance of sewer systems to the general health and welfare of communities, the fact remains that *Hamilton's Appeal* only addressed itself to sewer fees imposed by mu-

nicipalities pursuant to Section 1 of the Sewer Act, and not to charges, as here, imposed by municipal authorities pursuant to Section 4 of the Act. Hence, *Hamilton's Appeal* is clearly distinguishable from our decision in *Marnickas* which is controlling here.
*Id.*, 481 A.2d at 387.

8. See the City of Philadelphia Ordinance, approved August 1, 1940.

9. Act of April 14, 2006, P.L. 85, 53 P.S. §§ 3102.101–3102.507.

nonpayment of a sewage charge. Perano's position is without merit.

Section 502 of the WSA provides:

(a) General rule.—Except as set forth in subsection (c), all of the following apply:

(1) If the owner or occupant of a premises served by a water utility neglects or fails to pay, for a period of 30 days from the due date, a rental, rate or charge for sewer, sewerage or sewage treatment service imposed by a municipality or municipal authority, the water utility shall, at the request and direction of the municipality, the authority or a city, borough or township to which the authority has assigned its claim or lien, shut off the supply of water to the premises until all overdue rentals, rates, charges and associated penalties and interest are paid.

(2) If the authority, city, borough or township also supplies water to premises, the authority, city, borough or township is authorized to shut off the supply of water to the premises.

. . . .

(b) Written notice.—Except as set forth in subsection (c), all of the following apply:

(1) In no case shall the water supply to premises be shut off until ten days after a written notice of intention to do so has been posted at a main entrance and mailed to the person liable for payment of the rentals and charges and the owner of the property or property manager.

(2) If during the ten-day period the person liable for payment of the rentals and charges delivers to the water utility authority or municipality supplying water to the premises a written statement under oath or affirmation averring that there is a just defense to all or part of

the claim and that the statement was not executed for the purpose of delay, the water supply shall not be shut off until the claim has been judicially determined.

(c) Exception.—Prior to discontinuing service in a residential building as defined under [USTRA] a water utility shall comply with the provisions of that act.

53 P.S. § 3102.502.

Section 3 of the USTRA provides:

(a) Except when required to prevent or alleviate an emergency or except in the case of danger to life or property, before any discontinuance of service within the utility's corporate limits, to a landlord ratepayer for nonpayment a public utility shall:

. . . .

(3) Notify each residential unit reasonably likely to be occupied by an affected tenant of the proposed discontinuance in writing as prescribed in [S]ection 6 [of the USTRA] at least seven days after notice to the landlord ratepayer pursuant to this section, and at least 30 days before any such discontinuance of service. However, if within seven days of receipt of the notice issued pursuant to this section, the landlord ratepayer files a petition with the court disputing the right of the utility to discontinue service, such notice shall not be rendered until such petition has been adjudicated by the court.

68 P.S. § 399.3. Clearly, neither the WSA nor the USTRA prohibit ORD from providing notice to Frenchtown regarding termination of its water.[10]

Notably, Section 504 of the WSA, 53 P.S. § 3102.504, permits, but does not require, a water utility to act as a billing and

---

10. As previously discussed, municipal authorities are granted broad powers to carry out their statutory purposes. *See* 53 Pa.C.S. § 5607(d).

collection agent for a municipal authority for the use of a sewage system. Therefore, the WSA contemplates situations where the municipal authority will be acting as its own billing agent. It follows, then, that the WSA merely requires that notice be given, but does not explicitly mandate that the water utility do so. Moreover, there is nothing in the USTRA that prohibits a water utility from using an agent for purposes of providing the aforementioned notices.

■ Next, Perano argues that since the trial court concluded that the "Notice of Water Termination" was invalid, there is no pending water termination, and therefore, there is no duty to provide the names of Frenchtown's tenants.

In addition to the provisions of Section 3 of the USTRA cited above, Section 4 of the USTRA provides:

(a) Upon receiving a lawful request for the names and addresses of the affected tenants pursuant to this act, it shall be the duty of the landlord ratepayer to provide the utility with the names and addresses of every affected tenant of any building or mobile home park for which the utility is proposing to discontinue service. . . .

(b) Such information shall be provided by the landlord ratepayer:

(1) within seven days of receipt of the notice to the landlord ratepayer required by [S]ection 3 [of the USTRA]; or

(2) within three days of any adjudication by a court having jurisdiction that the landlord ratepayer must provide the requested information if the landlord files a petition with the court within seven days of receipt of the notice to the landlord disputing the right of the utility to discontinue service.

(c) It shall be the duty of any public utility to pursue any appropriate legal remedy it has, necessary to obtain from the landlord ratepayer, the names and addresses of all affected tenants of a building or mobile home park for which the utility is proposing discontinuance of service to such landlord ratepayer.

68 P.S. § 399.4.

In order to comply with Section 3 of the USTRA, if a valid notice of discontinuance of service had been issued, Perano would have been required to identify his tenants. However, in the instant matter, the trial court concluded that the notice was defective and invalid, and directed that ORD issue a new notice with the correct amount due. Therefore, upon issuance of a valid discontinuance of service notice, Perano is required to provide his tenants' names to ORD.

Finally, Perano asserts that ORD engaged in an alleged unlawful taking of his property without just compensation, and that ORD's failure to comply with its "statutory and regulatory obligations with respect to providing sewer service . . . cannot be tolerated." Perano Br. at 37. Perano does not provide any legal authority to support his implied assertion that the alleged unlawful taking of his property justifies his failure to pay sewer fees. Given that the eminent domain issue is the subject of another action, we decline to address it.

Based upon the foregoing, the trial court's July 18, 2011 order is affirmed.

## ORDER

AND NOW, this 27th day of June, 2012, the Court of Common Pleas of Clearfield County's July 18, 2011 order is affirmed.