NEALON, J.,
A municipal sewer authority has filed this collection action against an eighty year old widow, seeking payment of monthly sewer user fees for a structure that has been uninhabited for ten years and which is used solely for storage of her son’s excavating and landscaping equipment. Although the widow has connected her residence to the sewer system and paid all sewer connection and monthly user fees for that residential property, she has not connected the storage structure to the sewage system, nor has she paid any sewer fees for that separate structure, since the shower, toilet and sinks have been removed from that storage structure which is incapable of discharging sanitaiy sewage or wastewater from its inoperable septic system due to the presence of the sewer authority’s pipelines in the drain field for that decommissioned septic system.
A sewer authority is vested with the discretion to establish and collect sewer fees at reasonable and uniform rates, and may impose a monthly user fee upon a property *199 that is not connected to the sewer system, but only if the enabling ordinance mandates such connection by that property. The applicable 2007 and 2011 ordinances only require an “occupied building” to connect to the sewer system, and the structure in question does not constitute an “occupied building” under those ordinances. Although the 2012 ordinance replaced the words “occupied building” with the phrase “any structure built for or capable of use for human occupancy,” the definition of that substitute terminology in the 2012 ordinance nevertheless requires the structure to be capable of discharging sanitary sewage or wastewater now or in the future in order to be obligated to connect to the sewer system. Since all water service facilities have been removed from the widow’s storage structure, and the sewer authority’s placement of pipelines through the septic drain field has permanently decommissioned the structure’s septic system, that structure is incapable of discharging sanitary sewage or wastewater now or in the future. As such, that structure is not required to be connected to the sewer system under the 2012 ordinance. Consequently, the sewer authority committed a manifest and flagrant abuse of discretion in attempting to collect unreasonable sewer user fees for the widow’s long-uninhabited structure which is unable to discharge sanitary sewage or wastewater, and for that reason, a non-jury verdict will be entered in her favor.
I. PROCEDURAL HISTORY
Plaintiff, Scott Township Sewer and Water Authority (“the Sewer Authority”), commenced this action against defendant, Regina S. Tellip (“Tellip”), by the filing of a *200 “Municipal Claim” on August 27,2013, seeking to recover unpaid sewer fees in the amount of $2,168.68 for the years 2011,2012 and 2013. (Docket entry no. 1). On September 18, 2013, the Sewer Authority secured a writ of scire facias, which was later served upon Tellip on October 16,2013.[1] (Docket entry nos. 2-3). On November 6, 2013, Tellip filed an “affidavit of defense” in response to the writ of scire facias, and asserted that her property at 1021 Lakeland Drive should not be subject to sewer fees since it “contains no water facilities.” “has been uninhabitable for the last 8-10 years,” and “is not an Equivalent Dwelling Unit (EDU) as defined by Scott Township’s Resolution # 2012-01-10.” (Docket entry no. 4 at ¶¶ 2, 4-5).
After the Sewer Authority filed a certificate of readiness under Lacka. Co. R.C.R 214, a compulsory arbitration hearing was conducted before a board of arbitrators which entered an award in favor of the Sewer Authority. (Docket entry nos. 5, 7). Tellip filed a de novo appeal under Pa.R.A.P. 1311 and Lacka. Co. R.C.P. 1301, and following a status conference before the undersigned on November 6, 2014, this case was scheduled for a non-jury trial on *201 January 29, 2015. (Docket entry no. 7-8, 11-12). On that date, testimony was received from Karen Cecchini, Gary Wilding, Theodore Tellip, Jr., and Carl Ferraro, and the Sewer Authority introduced fifteen exhibits while Tellip submitted eight exhibits.
“In a bench trial, the trial judge acts as the fact-finder and has the authority to make credibility determinations and to resolve conflicts in evidence.” Merrell v. Chartiers Valley School District, 51 A.3d 286, 293 (Pa. Cmwlth. 2012). When serving as the finder of fact, the trial judge is “in the sole position to observe the demeanor of the witnesses and assess their credibility.” Hirsch v. EPL Technologies. Inc., 910 A.2d 84, 88 (Pa. Super. 2006), app. denied, 591 Pa. 727, 920 A.2d 833 (2007). As a consequence, the trial judge in a nonjury trial “is free to believe all, part of none of the evidence presented.” Haan v. Wells, 103 A.3d 60, 72 (Pa. Super. 2014); Rizzo v. MSA. Inc., 18 Pa. D. & C. 5th 233, 244-245 (Lacka. Co. 2010), aff’d, 32 A.3d 830 (Pa. Super. 2011).
In addition, “[j judicial notice can be taken of pleadings and judgments in other proceedings where appropriate,” Krenzel v. Southeastern Pennsylvania Transportation Authority, 840 A.2d 450, 454 n.6 (Pa. Cmwlth. 2003), particularly where the other proceedings involve the same party. Lycoming County v. Pennsylvania Labor Relations Board, 943 A.2d 333, 335 n.8 (Pa. Cmwlth. 2007). A court may also take judicial notice of established matters in publicly-available dockets for cases filed in its own jurisdiction. See Deyarmin v. Consolidated Rail Corp., 931 A.2d 1, 15 n. 10 (Pa. Super. 2007), app. denied, 597 *202 Pa. 706, 948 A.2d 805 (2008). The factual findings set forth in Section II below are based upon the credible and relevant evidence presented during the bench trial, as well as those matters which may be judicially noticed.
II. FINDINGS OF FACT
(A) INTRODUCTION
The Scott Township Board of Supervisors created the Sewer Authority pursuant to the Municipality Authorities Act, 53 Pa. C.S. §§ 5601-5623, in order to construct and operate a public sanitary sewer collection system. (Plaintiff’s Exhibit No. 1 at pp. 1, 6). Tellip is an 80 year old, deaf resident of Scott Township and the record owner of properties located at 5 Marjean Street and 1021 Lakeland Drive in Scott Township. (Plaintiff’s Exhibit No. 2 at pp. 2-11, 15-64; transcript of proceedings (T. P.) on 1/29/15 at p. 72). Tellip resides in a single dwelling unit situated on her Marjean Street property. (Plaintiff’s Exhibit No. 2 at p. 7; T. P. 1/29/15 at pp. 72, 89).
A structure is located on Tellip’s Lakeland Drive property, but it has been uninhabited since 2004. (T. P. 1/29/15 at p. 75). In 2005, the water pipes in that structure froze and burst, causing extensive damage to the structure’s ceiling. {Id. at pp. 79-80; Defendant’s Exhibit No. 4). The Lakeland Drive structure is used solely for the storage of excavating and lawn service equipment owned by Tellip’s son, Theodore Tellip, Jr. (T. P. 1/29/15 at pp. 76-77; defendant’s exhibit nos. 2-3). The kitchen sink and bathroom shower, toilet and sink have been removed from the structure, which does not have any functioning *203 water service from a nearby well. (T. P. 1/29/15 at p. 80; defendant’s exhibit nos. 5-6). Besides being located in a special flood hazard area designated by the federal emergency management agency, the Lakeland Drive structure’s former septic system is inoperable since the Sewer Authority installed sewer lines which traverse the drain field for that former septic system. (T. P. 1/29/15 at p. 85; eefendant’s exhibit no. 7).
(B) SEWER ORDINANCES AND RESOLUTIONS
On February 21, 2007, the Scott Township Board of Supervisors enacted ordinance # 07-02-21A governing the connection to the public sanitary sewer collection system in the township. The stated purposes of the 2007 ordinance are “to prohibit certain use of privies, cesspools, septic tanks or similar receptacles for receiving sewage within a certain portion of the township..., and to require connections to be made to such sewer system, by the owners of occupied buildings on property adjoining, abutting on or adjacent to the sewer system, in accordance with this ordinance and with the rules and regulations... adopted by the [Sewer] Authority.” (Docket entry no. 16 at p. 1). An “occupied building” is defined by the ordinance as “each single dwelling unit, household unit, flat or apartment unit, store, shop, office or industrial unit or family unit contained within any structure and intended for continuous or periodic habitation, occupancy or use by human beings or animals and from which structure sanitary sewage is, or may be discharged.” (Id at p. 2) (emphasis added).
*204 Under Section 2 of the 2007 ordinance, “[a]ll persons or entities owning any occupied building now erected upon property accessible to the Sewer System shall, at their own expense, connect such building with the Sewer System within sixty (60) days after written notice to such persons from the township.” (Id.). Section 2 further states that “[i]t is the intent of this ordinance that any property which abuts, adjoins, or is adjacent to the Sewer System and also contains an occupied building be required to connect to the system at the owner[‘]s expense, without regard to the distance between the nearest sewer line and said occupied building.” (Id. at p. 3) (emphasis added). Pursuant to Sections 6 and 7 of the 2007 ordinance, “if any owner of an occupied building on property in the township accessible to the Sewer System shall have failed to connect such property with the Sewer System as required by said Section 2,” the township is empowered to serve written notice upon the owner to so connect within thirty days, and if [s]he fails to do so, to charge the owner “with a summaiy offense and upon conviction” to impose a fine “not exceeding one thousand ($1,000.00) dollars plus costs for each offense. (Id. at p. 4). By its plain language, the ordinance only requires an owner of an “occupied building” to connect to the sewer system.
On July 28, 2011, the Sewer Authority adopted resolution # 2011-07-01 “imposing sewer user fees/ inspection fees and charges for the use of the suthority’s sewage conveynacing (sic) system and other facilities.” (Resolution no. 2011-07-01 atp. 1). Section 1 imposed a monthly user fee of $78.40 per Equivalent Dwelling Unit *205 (EDU) “upon the owners and the users of each property served by (whether by direct connection or through the intervening utilization of other sewer lines and facilities), connected to or required to be connected to the Sewage Facilities....” (Id. at p. 2). In language identical to the definition of an “occupied building” in ordinance # 07-02-21 A, Section 8 of resolution # 2011-07-01 defines an EDU as meaning “each single dwelling unit, household unit, flat or apartment unit, store, shop, office, business or industrial unit or family unit contained within any structure and intended for continuous or periodic habitation, occupancy or use by human beings, or animals and from which structure sanitary sewage is, or may be, discharged.”[2] (Id. at pp. 8-9). Thus, ordinance # 07-02-21A and resolution # 2011-07-01 require connection to the sewer system and payment of monthly user fees only for dwelling or industrial units that are intended for continuous or periodic habitation and from which sanitary sewage is, or may be, discharged.
Three weeks after the Sewer Authority’s adoption of resolution # 2011-07-01, the township amended ordinance # 07-02-21A by enacting ordinance # 11-08-18 on August 18, 2011. (Ordinance # 11-08-18 at p. 1). The 2011 ordinance is identical to the 2007 ordinance with two exceptions. First, Section 2(b) of the 2011 ordinance addresses occupied buildings with septic systems, and states that “[a] 11 person or entities owning any property *206 that is accessible to the Sewer System that contains a septic system that is in use by an occupied building or buildings shall, at their own expense, connect such buildings with the Sewer System within ninety (90) days after written notice to such persons from the township.” (Id. at p. 2). Second, Section 2(c) of the ordinance provides that “ [a] 11 persons or entities owning any occupied building must decommission their existing septic systems immediately upon connection to the central sewer system.” (Id.).
On January 10, 2012, the Sewer Authority adopted resolution # 2012-01-10 as an amendment to resolution # 2011-07-01. Resolution # 2012-01-10 establishes a “connection fee” in addition to a monthly user fee. (Resolution # 2012-01-10 at p. 2). Section 8(a) of the 2012 resolution also changes the prior definition of an EDU to mean:
...each structure of any kind or nature initially constructed with or thereafter which contains toilet and water facilities and/or lines emanating from the structure capable of carrying sewage or wastewater from said structure, or any single dwelling unit, household unit, flat or apartment unit, store, shop, office, business, industrial unit, or family unit contained within any structure, that is capable of or was intended when constructed, for continuous or periodic habitation, occupancy or use by human beings, or animals or from which structure or unit sanitary sewage is, or maybe, discharged in any manner.
(Id. at p. 9) (changes in italics). Furthermore, Section *207 8(g) sets forth a procedure by which an individual may “challenge or contest the EDU determination” of the Sewer Authority “within 60 (Sixty) days of the day of the first bill issued by the Authority for user fees....” (Id. at p. 11).
On February 16, 2012, Scott Township enacted ordinance # 12-02-16-003 as an amendment to ordinance # 07-02-21A and ordinance # 11-08-18. In contrast to the 2007 and 2011 ordinances which both contained a stated purpose of requiring connection to the sewer system “by the owners of occupied buildings on property adjoining, abutting on or adjacent to the sewer system,” the 2012 ordinance requires such connection “by the owners of any structure built for or capable of use for human occupancy on property adjoining, abutting on or adjacent to the sewer system.” (Ordinance # 12-02-16-003 at p. 1). The 2012 ordinance further deletes the definition of an “occupied building,” and replaces it with the definition of “any structure built for or capable of use for human occupancy,” which is:
...each structure of any kind or nature initially constructed with or thereafter containing toilet or water facilities and/or lines emanating from the structure capable of carrying sanitary sewage or wastewater from said structure or each single dwelling unit, household unit, flat or apartment unit, store, shop, office, business or industrial unit contained within any structure, whether or not up to code, and capable of or intended when constructed, for continuous or periodic habitation, occupancy or use by human beings or animals and from *208 which structure sanitary sewage or wastewater is now, or may be discharged in any manner in the future.
(Id. at p. 2) (emphasis added). Additionally, Section 2(a) of the 2012 ordinance requires connection to the sewer system by any such “structure built for or capable of use for human occupancy.” (Id.).
A material conflict appears to exist between the definition of an EDU in the 2012 Resolution and the definition of “any structure built for or capable of use for human occupancy” in the 2012 ordinance. Section 8(a) of resolution #2012-01-10 defines an EDU as any structure initially constructed with or thereafter containing toilet and water facilities or lines capable of carrying sewage “that is capable of or was intended when constructed, for continuous or periodic habitation, occupancy or use by human beings, or animals or from which structure or unit sanitary sewage is, or may be, discharged in any manner.” (Resolution # 2012-01-10 at p. 9). However, the definition of “any structure built for or capable of use for human occupancy” in ordinance # 12-02-16-003 references comparable structures “capable of or intended when constructed, for continuous or periodic habitation, occupancy or use by human beings or animals and from which structure sanitary sewage or wastewater is now, or may be discharged in any manner in the future.” (Ordinance # 12-02-16-003 at p. 2). By virtue of the use of the conjunctive word “and” in the 2012 ordinance, the structure must not only have been “intended when constructed” for habitation or occupancy, but must also currently be discharging, or capable of discharging, sanitary sewage or
*209 wastewater.[3] To the extent that a conflict exists between the resolution dated January 10, 2012, and the ordinance of February 16, 2012, the township’s ordinance controls, see Seitel Data, Ltd. v. Center Township, 92 A.3d 851, 859 (Pa. Cmwlth. 2014) (“As a general rule, a resolution does not have the effect of a law or an ordinance.”), particularly since ordinance # 12-02-16-003 was adopted after the passage of resolution # 2012-01-10. See 6 L’s Packing Company v. WCAB (Williamson), 615 Pa. 615, 631, 44 A.3d 1148, 1158 (2012) (tension between laws enacted on different dates is generally to be resolved in favor of giving the greatest effect to the later-enacted provision).
On October 23, 2012, the Sewer Authority adopted resolution # 2012-10-23 which amended the monthly user fee and connection fee set forth in resolution # 2012-01-10. The second 2012 resolution increases the monthly user fee to $88.00 “per EDU effective October 12, 2012.” (Resolution # 2012-10-23 at p. 1). Moreover, on April 9, 2013, the Sewer Authority adopted resolution # 2013-04-002 approving the assessment of certain interest, penalties and fees “to be added to the amount collected as part of *210 municipal claims for delinquent accounts.” (Plaintiff’s Exhibit No. 1 at pp. 20-23).
(C) GRABOWSKI PROPERTY
The Scott Township Code Enforcement Officer, Carl Ferraro, is vested with the authority to enforce the township’s ordinance mandating connection to the sewer system and the Sewer Authority’s resolution governing connection fees and monthly user fees. (T. P. 1/29/15 at p. 97). According to Mr. Ferraro, John Grabowski, Jr., owns a property on Green Grove Road, Scott Township, which contains a structure that housed a mountain bike club known as the Hubbard Bike Club. (Id. at pp. 97-98). The structure originally had a “commercial kitchen,” which included “an Ansul system, grill, fryers [and] pizza ovens,” and also contained two bathrooms, a shower [and] kitchen sink” that were serviced by “a lateral [pipe] to the property.” (Id. at pp. 98-99).
The Sewer Authority initially classified the Grabowski structure as an EDU and attempted to charge a monthly user fee for that Green Grove Road property. (Id. at p. 98). However, after the Hubbard Bike Club ceased operations there once the bathrooms became inoperable “because the pipes had frozen due to lack of heat,” Mr. Grabowski removed the shower, sinks and toilets, but “did not remove the water” service to the structure. (Id. at p. 100). As soon as Mr. Ferraro verified that the shower, sinks and toilets had been removed and that “the septic system was nonoperational,” the Sewer Authority chose not to charge Mr. Grabowski a monthly user fee for his Green Grove Road *211 property. (Id.).
(D) KASHUBA PROPERTY
Edward Kashuba owns land in Scott Township, including a property on Layton Road containing a house that Mr. Kashuba uses for storage of “[products from his Corky’s Garden Path Greenhouse” business, (Id. at pp. 101-103). Although the Kashuba structure has active water service that Mr. Kashuba uses “for watering his plants outside and for...hot water boilers” which heat that structure and Mr. Kashuba’s nearby house, “the toilets and bathtubs” and the fixtures for the “bathroom and kitchen” were removed from that storage structure. (Id. at p. 103). Since that structure is incapable of discharging any sanitary sewage, Mr. Kashuba refused to pay a monthly user fee to the Sewer Authority for that property. (Id. at p 104).
On August 27, 2013, the township filed a “municipal claim” against Mr. Kashuba seeking to recover $2,233.58 for unpaid sewer fees and recoverable penalties and costs. (Scott Township v. Kashuba, No. 13 CV 5278 at docket entry no. 1 (Lacka. Co.)). In addition, Mr. Ferraro filed a summary offense citation against Mr. Kashuba pursuant to Sections 6 and 7 of ordinance # 12-02-16-003. (T. P. 1/29/15 at p. 102; Com. v. Kashuba, No. 13 SA 0135 (Lacka. Co.)). The Township secured a writ of scire facias against Mr. Kashuba on September 18, 2013, and Mr. Kashuba filed preliminary objections which asserted, inter alia, that the Sewer Authority “has impermissibly and selectively assessed properties for the collection of sewage fees by selectively classifying equivalent dwelling *212 units (EDUs)...in violation of the 14th Amendment of the United States Constitution.” (Scott Township Sewer and Water Authority v. Kashuba, supra, at docket entry nos. 2-3).
The Sewer Authority filed a praecipe for assignment on April 21, 2014, and the chief deputy court administrator issued a notice scheduling Mr. Kashuba’s preliminary objections for oral argument on June 23, 2014. (Id. at docket entry nos. 5, 7). In the interim, a summary appeal hearing was conducted in Com. v. Kashuba, supra, on April 22, 2014, at which time Mr. Kashuba argued that his Layton Road property should be treated in the same manner as Mr. Grabowski’s Green Grove Road property since the structure on Mr. Kashuba’s land was similarly incapable of discharging sanitary sewage. (T. R 4/22/14 at pp. 13-16,24-25 in Com. v. Kashuba, No. 13 SA 135 (Lacka. Co.)). At the conclusion of the summary appeal hearing, judge Vito P. Geroulo held:
The Court: Why is [Mr. Grabowski] different from [Mr. Kashuba’s] situation?
Mr. Ferraro: I don’t believe it is.
The Court: You don’t believe it is, okay, I don’t either. I’m going to sustain the appeal. Not guilty
(Id. atp. 26). Following judge Geroulo’s ruling, the Sewer Authority filed praecipes to withdraw the writ of scire facias and the municipal claim that it had filed against Mr. Kashuba. (Scott Township Sewer and Water Authority v. Kashuba, supra. Docket entry nos. 8, 10).
*213 (E) TELLIP PROPERTY
Tellip resides in a home at 5 Marjean Street, Scott Township, which is contiguous to her property at 1021 Lakeland Drive, Scott Township. (T. P. 1/29/15 at p. 89). Upon being notified by the Sewer Authority pursuant to the ordinance, Tellip submitted an “application for central sewer connection” for her Marjean Street property, and thereafter connected to the sewer system and paid the required fees. (T. P. 1/29/15 at p. 89; defendant’s exhibit no. 8). Tellip has declined to pay sewer fees for her Lakeland Drive structure since, according to her counsel, that “house has no water system, sinks, toilets or bathing facilities, the septic system is nonfunctioning, it is not capable for human occupancy or use by human beings, and is not an Equivalent Dwelling Unit (‘EDU’) as defined in Section 8(a) of Resolution # 2012-01-10 ‘from which sanitary sewage is or may be discharged in any manner’ in order to be billed for sewer fees.” (Docket entry no. 13 at p. 1-2). The Sewer Authority counters that since Tellip’s structure on Lakeland Drive “was constructed as the type of structure that is intended for habitation,” it must be connected to the sewer system pursuant to the clear language of ordinance # 12-02-16-003, such that it is irrelevant that the structure “is not capable of discharging sewage and is uninhabitable.” (Docket entry no. 14 at pp. 5-6).
During his non-jury trial testimony, Mr. Ferraro, who is responsible for enforcing the sewer ordinance and resolution, was questioned regarding the Sewer Authority’s disparate treatment of the Grabowski, Kashuba and Tellip *214 properties. Specifically, Mr. Ferraro testified:
Q. How would you compare Mrs. Tellip’s property, which is being charged by the Sewer Authority for a sewer fee, with that of the Grabowski property and the Kashuba property, which have been removed from being assessed for sewer fees?
A. Very similar.
Q. When you say they’re similar, what do you mean by similar?
A. Well, because Kashuba’s does have hot water boilers, so that the water is being used throughout the house and Grabowski still has functioning hose bibs..., but where the Tellip property isn’t using any water at all.
* * *
Q. As a result of the Kashuba appeal, would you bring an action against Mrs. Tellip because her property is similar to the Kashuba and Grabowski properties?
A. No.
(T.P. 1/29/15 at pp. 104-106).
III. DISCUSSION
(A) SCOPE OF REVIEW
A municipal authority is statutorily empowered “[t]o fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform *215 rates....” 53 Pa.C.S. § 5607(d)(9). In deciding whether a sewer rate or fee is reasonable, the scope of judicial review is limited to determining whether there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate or fee system. Scott Township Sewer and Water Authority v. Ease Simulation, Inc., 2 A.3d 1288, 1290 (Pa. Cmwlth. 2010); Daleville United Methodist Church v. Covington Township Sewer Authority, 100 Lacka. Jur. 78, 83 (1998). The party challenging the validity of the rate or fee has the burden of proving that it is unreasonable. Ack v. Carroll Township Authority, 661 A.2d 514, 517 (Pa. Cmwlth. 1995), app. denied, 543 Pa. 731, 673 A.2d 336 (1996); Citizens Against Unfair Treatment v. Scott Township, 151 Pa. Cmwlth. 235, 241, 616 A.2d 756, 759 (1992), app. denied, 533 Pa. 647, 622 A.2d 1378 (1993). When considering such a challenge, “[t]he Court of Common Pleas’ duty [i]s to determine the uniformity and reasonableness of the rates established by the authority, not whether it would choose a different method of establishing reasonable and uniform rates.” Hopewell Township v. Municipal Water Authority of Borough of Aliquippa, 82 Pa. Cmwlth. 134, 141, 475 A.2d 878, 883 (1984) (quoting South Union Township Sewage Authority v. Kozares, 13 Pa. Cmwlth. 325, 332, 320 A.2d 381, 385 (1974)); Daleville United Methodist Church, 100 Lacka. Jur. at 84.
(B) REASONABLENESS OF SEWER FEES
Under Pennsylvania law, “it is well settled that sewer rental charges must bear a ‘reasonable relation to the value of the service rendered either as actually consumed or as *216 readily available for use.”’ Washington Realty Co., Inc. v. Municipality of Bethel Park, 937 A.2d 1146, 1150 (Pa. Cmwlth. 2007) (quoting Patton-Fereuson Joint Authority v. Hawbaker, 14 Pa. Cmwlth. 402, 407, 322 A.2d 783, 786 (1974)), app. denied, 599 Pa. 684, 960 A.2d 457 (2008). “In order to be assessed sewer rental fees, an individual sought to be charged must obtain ‘some’ benefit.” Perano v. ORD Sewer Authority, 47 A.3d 210, 217 (Pa. Cmwlth. 2012), app. denied, 618 Pa. 692, 57 A.3d 72 (2012); Ack, 661 A.2d at 517. “The mere fact that a parcel of property is connected to a sewage system provides value to the premises.” Scott Township Sewer and Water Authority, 2 A.3d at 1290; Washington Realty Co., 937 A.2d at 1150.
The Supreme Court of Pennsylvania and the Commonwealth Court of Pennsylvania have had occasion to consider the reasonableness of sewer rental charges assessed against properties that have not connected to the municipal sewer system. In Hamilton’s Appeal, 340 Pa. 17, 16, A.2d 32 (1940), the Supreme Court considered the validity of a City of Philadelphia Ordinance imposing sewer charges pursuant to the Sewer Rental Act, Act of July 18, 1935, P.L. 1286, as amended, 53 P.S. §§ 2231-2234. The ordinance charged a sewer rental fee for “each lot or parcel of land, building or premises having any connection with or being available for connection with the sewer system of the city or otherwise discharging sewage, industrial waste, water or other liquids or substances, either directly or indirectly, into the said sewer system.” Id. at 19, 16 A.2d at 33. The Supreme Court interpreted the Philadelphia ordinance as “requiring payment to be *217 made not only by those who have availed themselves of the right to connect with the sewer, but by all those to whom it is made available by its presence.” Id. at 21-22, 16 A.2d at 34.
The Hamilton’s Appeal court found that the Pennsylvania Sewer Rental Act “would appear to apply solely to charges based upon actual use[] of the sewer system, and further would seem to require that the charge be reasonably proportional to the value of the service rendered, and not in excess of it.” Id. at 22,16 A.2d at 35. Reasoning that the state statute “furnishes no authority for the ordinance in question,” the Supreme Court held that the assessment of a sewer fee upon properties which had not connected to the sewer system could not “be sustained on any theory of supposed special benefits arising from the mere presence or availability for use of the facility.” Id. at 22-23, 16 A.2d at 35. See also Marett v. Borough of Volant, 54 Pa. D. & C. 4th 77, 84 (Lawrence Co. 2001) (“The [.Hamilton’s Appeal] court held that it was unlawful, therefore, for properties to be charged when they were not connected to the system or connected to it but not utilizing it.”).
In the early 1980’s, the Commonwealth Court issued a series of decisions regarding the imposition of sewer rental fees upon owners of properties which had not connected to the available sewer system. In Coudriet v. Township of Benzinger, 49 Pa. Cmwlth. 275, 411 A.2d 846 (1980), the landowners argued that they could not “be forced to pay sewer rentals since they have never tapped into the sewer system.” Id. at 278, 411 A.2d at 848. Finding that such *218 a conclusion “would circumvent the statutory purpose behind the imposition of sewer rentals and undermine the financial soundness of a municipality’s sewer system,” the Commonwealth Court concluded that the property owners had “not presented any justification for not tapping into the sewer system which is readily accessible to them and are responsible to pay the rental fees despite the fact they have not utilized the services available to them.” Id. The Coudriet court further held that the landowners had “not met their burden of proving discrimination since they have been charged the same sewer rentals as those charged all other commercial properties throughout the township.” Id. at 279, 411 A.2d at 848-849.
Two years later, the Commonwealth Court cited Coudriet with approval in holding that a property owner “must pay the sewer rentals even though he has not tapped into the sewer system.” Marnickas v. Tremont Municipal Authority, 67 Pa. Cmwlth. 117, 120, 445 A.2d 1383, 1385 (1982). Shortly thereafter, the court in Pelton v. Pine Creek Municipal Authority, 85 Pa. Cmwlth. 187, 481 A.2d 385 (1984) relied upon Marnickas in finding that a municipal sewer authority was “authorized to assess sewer fees against properties which should be, but which are not, connected to the authority’s sewer system.” Id. at 189, 481 A.2d at 386-387. However, more than a decade after Pelton, the Commonwealth Court stated that “it was held in Hamilton’s Appeal. 340 Pa. 17, 16 A.2d 32 (1940), that where a rate schedule based on property assessment had charged rents to vacant lots and buildings which were not connected to the sewer system, the rates *219 were unreasonable because the sewer system conferred no benefit on the owners of the property.” Ack, 661 A.2d at 517.
More recently, the Commonwealth Court reconciled the Supreme Court holding in Hamilton’s Appeal with the Commonwealth Court decisions in Coudriet, Marnickas and Pelton. In Perano, supra, the property owner asserted that those Commonwealth Court rulings, which concluded “that landowners may be assessed sewer fees even if they have not connected to the sewer system, were wrongly decided because they disregarded the holding m Hamilton ⅛ Appeal....” Perano, 47 A.3d at 216. The Commonwealth Court observed that “the question before this court is whether ORD [Sewer Authority] may impose sewer fees upon the owner of property who is required by the ordinance to connect to the sewer system, if, in violation of the ordinance, the property owner fails to connect.” Id. (emphasis in original). Distinguishing Hamilton’s Appeal from Coudriet, Marnickas and Pelton based upon the specific language of the applicable ordinances, the Perano court concluded:
In the instant matter, the ordinance required Perano to connect to the sewer system. The ordinance in Hamilton’s Appeal did not require adjacent properties to connect to the sewer system.... Unlike the facts in Hamilton’s Appeal had Perano connected to the sewer system as he was required to do, there is no question that he would be required to pay the very same sewer fees he now disputes.
*220 Id. at 217 (emphasis in original). Thus, Per ano held that since “[t]he sewer system was readily available for Perano’s use, despite his failure to adhere to the ordinance and connect..., we find that Perano was properly assessed sewer fees.” Id.
(C) REQUIREMENT OF CONNECTION TO SEWER SYSTEM
Based upon the foregoing decisional precedent, the Sewer Authority may charge Tellip monthly user fees for her Lakeland Drive property only if the Scott Township ordinances required that property to connect to the sewer system. Conversely, if the Scott Township ordinances did not mandate a sewage connection for Tellip’s Lakeland Drive property, Hamilton ⅛ Appeal and its progeny deem sewer fees for that property to be unreasonable and a manifest abuse of discretion by the Sewer Authority. See Hickory Township v. Brockway, 201 Pa. Super. 260, 269, 192 A.2d 231, 235 (1963) (finding that fixed sewer rental charge on each receptacle located within a motel was prima facie reasonable, and noting that “[t]his is not the equivalent of a charge for the use of a sewer on a property not connected with the sewer.”).
The Sewer Authority seeks to recover unpaid sewer fees from Tellip for the years 2011, 2012 and 2013. The 2011 and 2007 ordinances required “any occupied building” to connect to the sewer system, which by definition did not include the long-uninhabited structure on Lakeland Drive from which sanitary sewage could not be discharged. Therefore, since Tellip’s Lakeland Drive property was not *221 an “occupied building” that was required to be connected to the sewer system under the governing ordinances, it was unreasonable and a manifest abuse of discretion for the Sewer Authority to charge Tellip monthly user fees for that property in 2011. See Hamilton’s Appeal, 340 Pa. at 22-23, 16 A.2d at 35; Perano, 47 A.3d at 217.
The Township’s substitution in the 2012 ordinance of the phrase “structure built for or capable of use for human occupancy” for the words “occupied building” does not yield a different result. As stated in Section 11(B) above, the use of the conjunction “and” in the definition of “any structure built for or capable of use for human occupancy” likewise renders that definition inapplicable to Tellip’s structure on Lakeland Drive. To be subject to the payment of monthly user fees under the language employed by the township in ordinance # 12-02-16-003, the Lakeland Drive structure must not only have been constructed initially with toilet and water facilities, or intended for occupancy when originally constructed, but must also be capable of discharging sanitary sewage or wastewater currently or in the future. As a result of the removal of all water service facilities from that property, coupled with the Sewer Authority’s permanent extinguishment of the operability of the former septic system’s drain field, the Lakeland Drive structure is incapable of discharging sanitary sewage or wastewater now or in the future.
Accordingly, pursuant to the language contained in the 2012 ordinance that was drafted by the township, Tellip was not required to connect her Lakeland Drive structure and property to the sewer system in 2012 or *222 2013. For that reason, the Sewer Authority’s imposition of monthly user fees for that property in 2012 and 2013 was likewise unreasonable and a manifest abuse of discretion. Hamilton’s Appeal, supra\ Perano, supra.
Tellip has not established that the disparate treatment of the similarly situated Grabowski and Kashuba properties by the township and the Sewer Authority is tantamount to impermissible selective enforcement of the township’s sewer ordinance and the Sewer Authority’s resolution. See KC Equities v. Department of Public Welfare, 95 A.3d 918, 934-935 (Pa. Cmwlth. 2014), app. denied, No. 455 MAL 2014 (Pa. 2015); Koken v. One Beacon Ins. Co., 911 A.2d 1021, 1030-1031 (Pa. Cmwlth. 2006). Under the equal protection clause to the United States Constitution and Article 1 Section 26 of the Pennsylvania Constitution, “[t]he essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly.” Muscarella v. Com., 87 A.3d 966, 972 (Pa. Cmwlth. 2014). The evidence established that the Sewer Authority has excused Mr. Grabowski and Mr. Kashuba from payment of sewer fees even though the Grabowski structure continues to have “functioning hose bibs” and the Kashuba property has active water service for hot water boilers and watering of plants. The township’s own code enforcement officer, who is responsible for enforcing the sewer ordinance and Sewer Authority Resolution, has acknowledged that the Grabowski, Kashuba and Tellip properties are “very” similarly situated, and that he would not institute an enforcement proceeding against Tellip.
*223 However, to establish a selective enforcement defense, Tellip must not only prove that other similarly situated residents were not charged or prosecuted for similar conduct, but also that she “was intentionally and purposefully singled out for an invidious reason.” Koken, 911 A.2d at 1031: Com. v. Sanico, Inc., 830 A.2d 621, 629 (Pa. Cmwlth. 2003). “Impermissible grounds such as race, religion or any arbitrary classification or the exercise of some constitutional right may constitute such an invidious reason.” Com. v. Celano, 717 A.2d 1071, 1074 (Pa. Cmwlth. 1998). Absent proof of such an “invidious reason,” Tellip cannot succeed with a selective enforcement or prosecution defense. See Com, v. Olavage, 894 A.2d 808, 811 (Pa. Super. 2006), app. denied, 589 Pa. 720, 907 A.2d 1102 (2006); Com. v. Faust, 702 A.2d 598, 604 (Pa. Cmwlth. 1997) (“To make a case for selective prosecution, a defendant must prove the element of intentional and purposeful discrimination, and the mere failure of authorities to prosecute others similarly situated does not constitute a violation of due process or equal protection rights.”), app. denied, 553 Pa. 708, 719 A.2d 747 (1998). Although Tellip has established that other similarly situated residents have not been subject to enforcement of the township’s sewer ordinance and the Sewer Authority’s Resolution, she has not demonstrated, or even alleged, the requisite “invidious reason” to support a selective enforcement or prosecution defense. Thus, her selective enforcement or prosecution claim must fail.
Nevertheless, based upon the foregoing, a verdict will be entered in favor of Tellip and against the Sewer *224 Authority. In addition, the clerk of judicial records will be directed to strike the writ of scire facias issued with respect to Tellip’s property at 1021 Lakeland Drive, Scott Township.
NON-JURY VERDICT
And now, this 6th day of February, 2015, upon consideration of the credible and relevant evidence introduced during the non-jury trial on January 29, 2015, the briefs and exhibits submitted by the parties, and the oral argument of counsel, and based upon the findings of fact and conclusion of law set forth in Sections (II) and (III) above, it is hereby ordered and decreed that a non-jury verdict is entered in favor of defendant, Regina S. Tellip, and against plaintiff, Scott Township Sewer and Water Authority, and that the clerk of judicial records is directed to strike the writ of scire facias issued on September 18, 2013.

. A writ of scire facias “is a writ authorized to be issued as a means of enforcing payment of a municipal claim out of the real estate upon which such claim is a lien,” and its object is “to ascertain the sum due on a lien of record and to give the defendant an opportunity to show cause why the plaintiff should not have execution.” Western Clinton County Municipal Authority v. Estate of Rosamilia, 826 A.2d 52, 56 (Pa. Cmwlth. 2003). In an in rem proceeding instituted by a writ of scire facias, “the owner files an “affidavit of defense’” raising “all defenses he or she has to the municipal claim.” Id. Once a writ a scire facias has been issued and the owner has filed an affidavit of defense, the parties may proceed to litigate their dispute pursuant to the municipal claims act, Act of May 16, 1923, P.L. 207, as amended, 53 P.S. §§7101 et seq. See North Coventry Township v. Tripodi, 64 A.3d 1128, 1133 (Pa. Cmwlth. 2013).

. However, Resolution # 2011-07-01 does not prescribe a procedure by which an individual may challenge the EDU determination made by the sewer authority. (Id at p. 10).

. The use of the word “or” is disjunctive and “means one or the other of two or more alternatives.” In re Paulmier, 594 Pa. 433, 448, 937 A.2d 364, 373 (2007); Com. v. Pal, 2013 WL 6197355, at *9 (Lacka. Co. 2013). The word “and” is conjunctive and conjoins the phrases that come before and after it, and does not imply a choice between alternatives. Com. v. Busser, 56 A.3d 419, 421-122 (Pa. Super. 2012), app. denied, 621 Pa. 663, 74 A.3d 125 (2013). In light of the conjunctive term “and” appearing before the phrase “from which structure sanitary sewage or wastewater is now, or may be discharged in any manner in the future” in ordinance # 12-02-16-03, connection to the sewer system is mandated only for owners of structures from which “sanitary sewage or wastewater is now, or may be discharged in any manner in the future.” See Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 962 (Pa. Super. 2011), aff’d, 2014 WL 7182170 (Pa. Dec. 15,2014).