**BLAIR TOWNSHIP WATER & SEWER AUTHORITY**

v.

**William H. HANSEN, Sr. and Gloria J. Hansen, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 8, 2002.

Decided July 22, 2002.

Michael S. Emerick, Duncansville, for appellants.

Nathan W. Karn, Hollidaysburg, for appellee.

BEFORE: FRIEDMAN, J., COHN, J., and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

William H. Hansen and Gloria Hansen (Appellants) appeal from a decision of the Court of Common Pleas of Blair County (trial court) which upheld a lien placed on Appellant's property by the Blair Township Water and Sewer Authority (Authority). We vacate the order of the trial court.

The facts in this case are not in dispute and are set forth in the following Stipulation of Facts:

1. [Appellants] are property owners who reside within Blair Township in Blair County, Pennsylvania and are the fee simple owners of the premises at issue herein.

2. That the [Authority] is a validly constituted municipal authority operating a water and sewer system within specific areas of Blair Township in Blair County, Pennsylvania.

3. That the Authority was created, among other things, for providing sewage and sewage treatment to residents of the Township.

4. That pursuant to a development plan and a grant from the Federal Government, the Authority entered into a construction of sanitary collection lines within specified areas of the Township, including the area where the Petitioners' residence is located.

5. That the Authority bored underneath Route 36, a public state highway in Blair Township, to a point on the boundary of the [Appellants'] land and entered the [Appellants'] land and extended a lateral some twenty (20) feet onto the [Appellants'] land.

6. That the entry was without any express written easement, any express consent from the landowner-[Appellants].

7. That having extended the lateral on to the [Appellants'] land, it allowed the Authority to maintain that the [Appellants'] residence was now within the one hundred fifty (150) feet of that lateral and as such the landowner was required to tap into that sewer system.

8. That said landowner refused.

9. That the Authority entered a lien for the amount of the tap-in.

10. That said landowner instituted proceedings to have the lien removed.

11. That the sewer main is within the right-of-way and is not within one hundred fifty (150) feet of said [Appellants'] property.

Appellants filed an Affidavit of Defense asserting that the Authority trespassed on their property and asking the trial court to strike the municipal lien. The Authority filed an Answer asserting that even though it constructed the lateral sewer line on Appellants' property without their consent it can still compel them to connect to the line.

■ Based on the above Stipulation, the trial court concluded that, when a de facto taking occurs, the landowner is entitled to damages for the property taken. As to Appellants' argument that the taking was not for a public purpose and therefore not subject to the provisions of the Eminent Domain Code (Code),[1] the trial court stated that "[t]his Court is of the opinion that should this issue be raised before a Board of View, [Appellants] would not be successful in their argument, but nevertheless, since they are entitled to proceed with an Eminent Domain hearing, they may raise before the Board any issue which the Board is empowered to hear and decide."[2] In summary, the trial court determined that Appellants must file a petition for the appointment of a Board of Viewers under Section 502 of the Code for the purpose of determining the amount of damages that they are entitled to for this de facto taking. Accordingly, the trial court entered an order directing the lien on Appellants' property to remain in full force and effect. This appeal followed.[3]

Section 502(e) of the Code provides that:

(e) If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury.

26 P.S. § 1–502(e).

■ Appellants argue that the trial court erred by refusing to strike the Authority's lien against their property because: 1) the unauthorized entry was a trespass and unauthorized taking of their property in violation of both the United States and Pennsylvania Constitutions, 2) the Authority is bound by the Second Class Township Code as that Code relates to the limits of taking private property and the Authority produced no evidence that it complied with those limits, 3) the Ordinance does not require that they connect to the sewer system.

The Authority contends that the trial court correctly concluded that Appellants' only recourse is to file a petition for the appointment of a Board of Viewers. In support of its argument, the Authority relies on a 1962 Montgomery County Court of Common Pleas decision, *Olzewski v. Whitemarsh Township*, 84 Montg. 397, 56 Mun.L.R. 269 (1962), which was decided two years before the Code was enacted.[4]

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–515.

2. The trial court's opinion and the Stipulation are in the Reproduced Record. However, the Reproduced record is not numbered as required by Pa. R.A.P. 2173.

3. Our scope of review in an eminent domain matter is limited to determining whether the trial court abused its discretion, committed an

error of law or whether the findings of the trial court are supported by sufficient evidence. *Captline v. County of Allegheny,* 727 A.2d 169, 172 (Pa.Cmwlth.1999).

4. Apparently, the Authority cites this case because it appears in the Notes of Decisions in Purdon's after 53 P.S. § 67502 and deals with a situation identical to the one in this case.

In *Olzewski,* the court held that a property owner can be compelled to connect to a sewer line even if the authority constructs a lateral sewer line, without the landowner's consent, to bring the landowner's principal building within 150 feet of the sewer line. The basis for the 150 feet rule is found in Section 502(a) of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended, added by* the Act of November 9, 1995, P.L. 350, which provides, in part, that:

> ... If any owner of property adjoining or adjacent to or whose **principal building is within one hundred and fifty feet from the sanitary sewer** fails to connect with and use the sanitary sewer for a period of sixty days after notice to do so has been served by the board of supervisors ... their agents may enter the property and construct the connection. The board of supervisors shall send an itemized bill of the cost of construction to the owner of the property to which connection has been made, which bill is payable immediately. If the owner fails to pay the bill, the board of supervisors shall file a municipal **lien for the cost of the construction** within six months of the date of completion of the connection.

53 P.S. § 67502(a) (emphasis added).

First, we note that the proper procedure in this case would have been for the Authority to file a declaration of taking pursuant to Section 405 of the Code. Then, if Appellants wished to object, they could have filed preliminary objections pursuant to Section 406 of the Code, which provides, in relevant part, that:

> (a) Within thirty days after being served with notice of condemnation, **the condemnee may file preliminary objections to the declaration of taking.** The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.
>
> ...
>
> (e) **The court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title.** If preliminary objections are finally sustained, which have the effect of finally terminating the condemnation, the condemnee shall be entitled to damages as if the condemnation had been revoked under section 408, to be assessed as therein provided.

26 P.S. § 1–406.

A situation similar to the one in the case *sub judice* occurred in *Ramad Realty Corporation v. Springettsbury Township Sewer Authority,* 10 Pa.Cmwlth. 1, 309 A.2d 80, 82–83 (1973). In *Ramad,* the sewer authority entered the landowner's property and constructed a sewer line without first filing a declaration of taking. The landowner filed an action in equity to have the sewer line removed. Subsequently, the sewer authority filed a declaration of taking. The sewer authority then filed preliminary objections to the landowner's equity action asserting that the landowner's exclusive remedy was under the Code. Thereafter, the landowner

filed preliminary objections to the declaration of taking asserting that the declaration should be dismissed because of the pendency of the prior equity action. In the alternative, landowner argued that the construction of the sewer line was unlawful. The trial court held that the Code provided the exclusive remedy and that the equity action should therefore be dismissed. The trial court also overruled that part of landowner's preliminary objections to the declaration of taking asserting that the construction of the sewer line was unlawful, thereby limiting the remaining proceedings to a determination of the damages sustained by the landowner.

On appeal, we affirmed the trial court order insofar as it sustained the sewer authority's preliminary objections to landowner's equity action. However, we reversed the trial court's order insofar as it overruled the landowner's preliminary objections attacking the validity of the declaration of taking. We reasoned that:

> There is, however, the possibility that a landowner does not want damages in a completed de facto taking situation but wants to challenge the initial validity of the taking. It may happen that the Authority, for whatever reason, has not filed a declaration of taking. Thus the landowner is in a situation where his land has been taken but he does not want damages, he wants the land back in its original posture. He does not wish to proceed under s 502(e) and there is no declaration of taking to challenge under § 406 whereby his rights may be protected. **In that situation, equity may be invoked in order to force the authority to proceed with proper condemnation proceedings.** This is the only method by which the landowner may protect his rights . . .

* * *

> The Appellant should have been allowed the opportunity to argue the merits of the validity of the taking in the first instance. The lower court specifically noted that the merits of these objections had not been argued but felt that since the equity action was foreclosed and that Appellant had an adequate remedy under the Code, these objections could be overruled. The Court limited the remaining proceedings to a determination of the damages sustained by Appellant.

> Under that interpretation and ruling, Appellant could never have challenged the validity or propriety of the taking in the first instance. Neither the Code nor decisional law direct that result and, indeed, mandate the opposite. **Appellant must be given the opportunity to argue the validity and propriety of the initial taking.** If the lower court, for whatever reason, finds that the initial taking was improper, it may order whatever redress that justice demands under § 406(e), including removal of the construction and restoration of the property. **Otherwise the basic right of a landowner to question the taking of his property will have been lost in a procedural morass.**

*Id.* at 83–84 (emphasis added).

In *St. Catherine Church, St. Jude Church v. The Mountaintop Area Joint Sanitary Authority*, 58 Pa.Cmwlth. 181, 427 A.2d 726 (1981), we had an opportunity to reaffirm our holding in *Ramad.* In that case, the landowners filed actions in ejectment and trespass against the sewer authority after it entered their lands and constructed sewer lines without first filing a declaration of taking · or exercising its power of eminent domain. The trial court

determined that this was a de facto taking and the landowners' only remedy was to file a petition for the appointment of a Board of Viewers under Section 502(e) of the Code. Accordingly, the trial court dismissed the complaints in trespass and ejectment filed by the landowners.

On appeal, the landowners contended that Section 502(e) was inadequate because a Board of Viewers can only assess damages and that trespass and ejectment should lie to permit them to oust the sewer authority. We reaffirmed our holding in *Ramad* and held that in this situation the proper procedure is for the aggrieved landowner to invoke equity and force the authority to proceed with proper condemnation proceedings, i.e. by filing a declaration of taking under Section 405 of the Code. However, we affirmed the order of the trial court, but only because it was improper for the landowners to file actions in ejectment and trespass. We emphasized that appellants still had the option to compel, through equity, the filing of a declaration of taking which could then be attacked through preliminary objections.

*See also Vartan v. Reed,* 100 Pa.Cmwlth. 163, 514 A.2d 646, 648 (1986), *petition for allowance of appeal denied,* 517 Pa. 612, 536 A.2d 1335 (1987) ("In *Ramad Realty Corp. v. Springettsbury Township Sewer Authority,* 10 Pa.Cmwlth. 1, 309 A.2d 80 (1973), and in *St. Catherine Church v. The Mountaintop Area Joint Sanitary Authority,* 58 Pa.Cmwlth. 181, 427 A.2d 726 (1981), this court did afford the appellant the option of filing an equity action, not for the purpose of testing the validity, propriety, power or right to condemn, but rather to force the Authority to proceed with proper condemnation proceedings. Thus, this court implicitly recognized that the proper method of attacking the power or right to condemn is by preliminary objection in an eminent domain proceeding.")

The situation in the case *sub judice* is exactly the one contemplated by *Ramad.* The Authority has not filed a declaration of taking, thereby making it impossible for Appellants to challenge the validity of the Authority's actions through the procedures set forth in the Code, i.e. by filing preliminary objections to the declaration of taking. Based on our holdings in *Ramad* and *St. Catherine,* we must conclude that the trial court erred by finding that Section 502 of the Code is Appellants' sole remedy to challenge the Authority's de facto taking of their land. Accordingly, we vacate the order of the trial court directing the lien to remain in full force and effect for the purpose of forcing the Authority to file a declaration of taking or, if the Authority refuses to do so, allowing Appellants to follow the proper procedure as set forth in *Ramad,* which is to file an action in equity to force the Authority to file a declaration of taking which Appellants may then challenge through preliminary objections.

### ORDER

AND NOW, July 22, 2002, the order of the Court of Common Pleas of Blair County docketed at 6493 GN 00 and dated November 1, 2001 is hereby VACATED.