# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maxatawny Township, Maxatawny : 
Township Municipal Authority :
:
v. : No. 68 C.D. 2015
: Submitted: June 19, 2015
Joseph A. Karaisz and Julie A. Karaisz, :
Appellants :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON** **FILED: September 25, 2015**

In this sloppy litigation over mandatory sewer connections and municipal liens, we try to focus on the order of the Berks County Court of Common Pleas (trial court), which by its terms denied a petition to strike certain municipal liens and ordered connection to the Maxatawny Township Municipal Authority (Authority) sewer system. Plagued by inattention to docket numbers, procedures and proper parties, and only marginally assisted by briefs, we affirm in part the order to connect to the sewer system, but on different reasoning. As to the denial of the petition to strike municipal liens, we vacate, without prejudice.

More particularly, two civil actions arose from Maxatawny Township's (Township) steps to enforce a mandatory sewer connection ordinance against two parcels (described in one deed) owned by Joseph A. Karaisz and Julie A. Karaisz (Owners), as part of a broader effort to obtain uniform connection to a new sewer system. All of the other 186 units within the sewer service area are

connected. Soon after the connection actions were filed, two statutory municipal claims were filed against Owners' property, which Owners eventually contested. Later, the sewer connection actions were heard with the statutory municipal claim proceedings, and several other matters were informally joined by reference. This appeal now purports to involve eight docketed actions.

Presently, Owners appeal the January 2015 order of the trial court. Owners argue the Township lacked authority to compel connections to the sewer system, and that rock on the property renders connection infeasible. In addition, Owners argue that the Authority cannot assert statutory municipal liens against their property for sewage treatment.

## I. Background

Owners possess property in Kutztown, Pennsylvania where they rent space to students attending Kutztown University as student housing. There are two addresses for the property, 15162 West Kutztown Road (15162 Tract) and 15164 West Kutztown Road (15164 Tract) (collectively, the Property). The Township required Owners to obtain two rental permits, including one for the apartment building, and one for a second structure, which is used as another dwelling unit. The apartment building straddles the boundary between both tracts such that one half is on the 15162 Tract and the other half is on the 15164 Tract. Owners represent they have two properties (Tr. Ct., Notes of Testimony (N.T.), 10/31/14, at 31, Reproduced Record (R.R.) at 28a) because each tract has a separate property tax identification number, although the tracts appear on a single deed. The

2

Property currently uses a single septic system for the 16 residents on both tracts and is connected to public water.

The sewer main is located in the private alley abutting the rear of the Property. The record reflects an easement for the alley. See Certified Record (C.R.), Dkt. No. 13-4828, Item No. 30, attachment A to Plaintiffs' proposed findings of fact.

### A. Connection Action

In May 2012, the Township provided a notice to connect the Property to the Authority's new sewer system. In August, the Township provided a second notice by certified mail to owners of properties who failed to connect in response to the first notice. The Authority represented it installed the laterals for the Property in 2012 under Owners' observation. At that time, Owners did not object to connecting other than to the anticipated monthly bill. Indeed, Owners advised they were attempting to connect the Property. See C.R., Dkt. No. 13-4828, Item No. 4 Complaint, Ex. F.

In February 2013, the Township filed a sewer connection action to mandate Owners connect the Property to the sewer system pursuant to Ordinance No. 2011-3 (Mandatory Connection Ordinance). The Mandatory Connection Ordinance refers to the location of the Authority-owned lateral as the pertinent line for consideration as to whether a property is adjoining, adjacent, or whether the principal building on the property is within 150 feet. After the Township obtained a judgment for the connection from a magisterial district judge, Owners appealed.

3

Thereafter, the Township filed a connection action complaint in the trial court, docketed as Nos. 13-4827 and 13-4828 (Connection Action). This complaint did not involve the Authority or seek tapping fees.

After a change of counsel, Owners pled three affirmative defenses in response to the Connection Action: (1) the structures on the Property are located at a distance greater than the 150-foot radius requiring connection; (2) rock between the principal structure and the laterals renders connection burdensome and infeasible; and, (3) the Authority has no legal grounds to charge sewer fees when the requisites for connection are not established and its resolution lacks a proper statutory basis.

## B. Lien Action

The Authority filed liens against the Property in July 2013 pursuant to the Municipal Claims and Tax Liens Act (MCTLA)[1] for sewer fees. These liens are docketed as Nos. 13-16526 and 13-16527 (Lien Action). Although Owners accepted notice of the liens, Owners did not take any action soon after receiving notice.

According to the dockets, no writs of scire facias were issued, and neither party took any further action until Owners filed a petition to strike liens more than nine months later, in April 2014. In addition to seeking the disqualification of the Township and Authority solicitor for a conflict of interest,

---

[1] Act of May 16, 1923, P.L. 207, as amended, 53 P.S. §§7101-7505.

the petition to strike liens contained the same three defenses as in the Connection Action.

Then, in July 2014, Owners filed an affidavit of defense, referring to its prior motion to strike the Lien Action and the Connection Action, and listing additional docket numbers, 14-6045 and 14-6046 (2014 Dockets). According to the docket summaries appended to the notice of appeal, the Township rather than the Authority filed the municipal liens. R.R. at 54a (pertaining to 14-6045).[2]

In response, the Authority moved to quash the motion to strike liens for failure to follow the writ of scire facias process set forth in the MCTLA. After noting that the Connection Action was not properly consolidated with the Lien Action, the Authority argued Owners were not permitted to so challenge the validity of the liens. Importantly, the trial court granted the Authority's motion to quash by order dated August 18, 2014, stating "Defendants [Owners] failed to follow proper procedure." See C.R., Dkt. No. 13-16526, Item No. 8; C.R., Dkt. No. 13-16527, Item No. 11.

At approximately the same time, the trial court conducted settlement conferences in an attempt to resolve the Actions, without success. The trial court then scheduled a hearing on the petition to strike, essentially consolidating the Connection Action and the Lien Action over the repeated objections of the Township and the Authority, and essentially reversing its prior order to quash.

---

[2] The docket summary for the other case, 14-6046, was not offered as an exhibit to the trial court.

5

## C. Hearing

At the hearing, counsel for the Township and the Authority raised objections to the inclusion of the Connection Action with the Lien Action. See N.T. at 4-5. The Authority also objected to the inclusion of the 2014 Dockets, in which the Authority obtained a judgment, within the petition to strike. Counsel for Owners responded that all of the judgments are void as they are predicated on a mandate to connect, which Owners challenged, and so involve common questions of law and fact that should be heard together.[3]

Bruce Rader, owner of Berks Surveying and Engineering (Surveyor), testified on behalf of Owners. Owners engaged him to survey the boundary of the Property and to locate the buildings on the Property and the sewer facilities behind the buildings. Surveyor testified an existing apartment building straddles the lot line such that it is located on both the tracts. He prepared plans showing the distances between the buildings and the property lines, and the distance between the buildings and the sewer facilities located in the back alley. He testified the apartment building is the principal building on the Property. He testified the distance from the sewer main to the principal building is 170 feet, in excess of the 150-foot radius. Id. at 10, R.R. at 23a.

As to the 15162 Tract, there is a "summer kitchen," which shares a wall with the apartment building, and appeared uninhabitable. Id. at 12, R.R. at

---

[3] The caption of the hearing transcript designates only the original Connection Action cases and the Lien Action cases, which all carry the docket number prefix "13." This is consistent with the caption of Owners' motion to strike as submitted in the Reproduced Record. See R.R. at 79a.

6

23a. The distance from that structure to the cleanout pipe is 126.3 feet. He noted that distance crosses over the property line because there are no sewer facilities located on the 15162 Tract. Thus, the lateral purportedly for the 15162 Tract was actually on the 15164 Tract. There is no lateral on the 15162 Tract.

As to the 15164 Tract, Surveyor testified the distance from the cleanout to the principal building is 150.5 feet. Id. at 13, R.R. at 24a. Both of the cleanouts or laterals are located on the 15164 Tract. Surveyor testified that he searched and was unable to find an easement for placing the laterals on the 15164 Tract.

On cross-examination, Surveyor confirmed that there is one deed for both tracts, but there are two pin numbers (property tax identification numbers) on the tax map, one for each tract. Id. at 17, R.R. at 25a. He also did not measure the distance from an existing garage or another existing building depicted on the plans to the lateral as that is an accessory building. Id. at 24, R.R. at 26a. However, that distance would be less than 150 feet because the existing building and existing garage are between the apartment building (principal structure) and the lateral. He explained the cleanout on the lateral should go to the principal structure. Id. at 25, R.R. at 27a. Significantly, Surveyor confirmed that the main and the laterals are either adjoined or adjacent to the Property through the "private alley behind [Owners' Property]." Id. at 26-27, R.R. at 27a.

Owners also presented testimony of Jamieson Graf, owner of Geo-Graf, Inc., which performs nonintrusive geophysical investigation. Using various

7

instruments, specifically ground penetrating radar, Graf testified he detected bedrock through "roughly half of the area from the house back toward the alley." Id. at 29, R.R. at 28a. He did not determine the thickness of the bedrock.

Owner Joseph Karaisz testified that he did not authorize the Township to place laterals on his property. He testified the Township advised him it planned to charge him connection fees for two properties. He also testified that the "existing building" that is within 150 feet of the lateral is zoned as a residence for two people and has bathroom facilities. Id. at 38-39, R.R. at 30a.

The Township presented the testimony of Christopher Falencki, the design engineer and inspector for the sewer project (Engineer). He testified about the condemnations of right-of-ways in the Township for the project. He confirmed that the Property abuts the alley where the sewer main is located. He stated the Authority advised him to have a lateral for every structure. Engineer testified that the reason for placing two laterals was to have one for the existing building, and one for the apartment building. The Authority sought owners' input as to where to install the laterals. Engineer explained the owners placed stakes on their properties to indicate their preferred location for the laterals. He did not recall any owners refusing to place stakes. He also testified that he was unaware of any rock making connection difficult. Id. at 49-50, R.R. at 33a. The Authority owns the laterals, and owns that lateral to the "cleanout, and the owners own from the cleanout back to the building." Id. at 48, R.R. at 32a. Engineer testified the laterals were installed within the 30-foot construction easement along the sewer main in the alley behind the Property.

8

The Township also presented the testimony of Chris Paff, the Township code enforcement officer (Code Enforcement Officer). He confirmed there was one tap or cleanout for each building used as a residence, the existing building and the apartment building. He explained that during rental inspections, at least one person resided in the existing building within the last year. He also testified that all the neighboring properties connected and none of them experienced issues with rock. He denied the apartment building was the principal building for both properties. Id. at 66, R.R. at 37a. Rather, Code Enforcement Officer testified: "I agree that this has a variance to allow for two principle [sic] uses. That's why they can occupy both buildings on this particular side of that property." Id. He explained he had "two principle [sic] buildings on here, not an accessory building." Id.

Justin Yaich, the Township manager, also testified regarding the sewer connection process in the area. He confirmed that 186 properties were connected, with only Owners' Property outstanding in the sewer service area. He testified that Owners did not object to connecting, but only to the amount of the bills. He also testified the Township began sending notices of non-compliance as to Owners' lack of connection in May 2012.

Based on the record, the trial court denied Owners' requested relief. Specifically, the trial court ordered that Owners "connect their properties to the [Authority] sewer system within 30 days," and denied Owners' petition to strike liens. C.R., Dkt. No. 13-4828, Item No. 32.

9

Owners filed a notice of appeal, which included additional docketed cases involving the same parties, including two cases where default judgments may have been taken (14-17037, 14-17038, R.R. at 61a, 62a).[4] In its Pa. R.A.P. 1925(a) opinion, after noting all of the cases involved the same issues, the trial court, without a motion, addressed all docketed cases in the opinion.

The trial court identified the main issue before it as whether Owners have "a principal building located within 150 feet from any part of the sewer system and whether there is a credible hardship that would prevent Owners from making the sewer connection." Tr. Ct., Slip Op., 3/6/15, at 3. The trial court noted Owners "do not dispute that [their] property lies adjacent or adjoining the sewer lines." Id. at 4. Nevertheless, the trial court concluded a principal building on the Property is situated within a 150-foot radius, and "as such, is within the appropriate distance for a mandated connection." Id. at 5. The trial court thus determined "[a] principal building lies within 150 foot of the connection point and this Court has properly held that [Owners] must connect to the sewer system." Id. at 5-6. The trial court also rejected Owners' contentions that connection was infeasible based on the presence of "rock," citing the insufficiency of the evidence. Id. at 5.

Ultimately, the trial court found in favor of the Township and the Authority, and denied Owners' petition to strike.

---

[4] The certified record reflects that the Authority filed praecipes for entry of judgment on September 16, 2014, after serving notice of default judgment.

10

## II. Discussion

On appeal,[5] Owners raise the same three arguments set forth in their defense to the Connection Action, and they assert the trial court erred in disregarding their evidence of hardship. Owners also contend the Township lacks authority to mandate connection under the circumstances.

To delineate the issues involved in this appeal, we first address the trial court's decision to author a Pa. R.A.P. 1925 opinion purporting to address eight docketed actions when the trial court's hearing and order pertained to only four cases. Rather than explaining the omission of the other four docketed cases as an oversight, the trial court stated the notice of appeal "contain[ed] an additional four dockets that were not previously brought to the attention of this Court. As all eight dockets present the same issues, this Court's opinion will apply to all eight dockets referenced in the above caption." Tr. Ct., Slip Op. at 2. In so doing, the trial court erred.

The trial court lacked authority to expand its decision beyond the scope of a final order to include additional cases not heard, and "not previously brought to [its] attention." Id. A trial court "loses jurisdiction to change an order once it becomes final; otherwise, nothing would ever be settled." City of Phila. Police Dep't v. Civil Serv. Comm'n of City of Phila., 702 A.2d 878, 880 (Pa.

---

[5] Our review in municipal lien cases is limited to determining whether the trial court abused its discretion, committed an error of law or whether constitutional rights were violated. Dreibelbis v. State College Borough Water Auth., 654 A.2d 52 (Pa. Cmwlth. 1994). As to mandatory connection, this Court reviews the legality of authorization de novo, and its scope of review is plenary. Perano v. ORD Sewer Auth., 47 A.3d 210 (Pa. Cmwlth. 2012).

11

Cmwlth. 1997). This is especially important here, where there may be different procedural issues in the added cases (containing the docket number prefix "14") which the trial court did not address.

Therefore, this Court shall limit its review to only those matters addressed in the trial court's order, the original Connection Action cases and the Lien Action cases (containing the docket number prefix "13").

## A. Connection Action

Owners' Property is the only one of 186 properties within the Authority sewer service area that is not connected to the sewer system. Owners argue the Township cannot force their connection to the sewer system because the principal building falls outside the 150-foot radius measured from the laterals off the sewer main.

## 1. Mandatory Connection

The goal of mandatory connection is to reach all properties within a service area. Perano v. ORD Sewer Auth., 47 A.3d 210 (Pa. Cmwlth. 2012). "To allow individual property owners to elect not to tap into a sewer system accessible to it would circumvent the statutory purpose behind the imposition of sewer rentals and undermine the financial soundness of a municipality's sewer system." Id. at 217 (quoting Coudriet v. Twp. of Benzinger, 411 A.2d 846, 848 (Pa. Cmwlth. 1980)). The Second Class Township Code (Code) provides in pertinent part:

> (a) The board of supervisors may by ordinance require adjoining and adjacent property owners to connect with and use the sanitary sewer system, whether constructed by the

12

township or a municipality authority or a joint sanitary sewer board. In the case of a sanitary sewer system constructed by the township pursuant to either section 2501 or 2516, the board of supervisors may impose and charge to property owners who desire to or are required to connect to the township's sewer system a connection fee, a customer facilities fee, a tapping fee and other similar fees, as enumerated and defined by clause (t) of subsection B of section 4 of the act of May 2, 1945 (P.L. 382, No. 164), known as the "Municipality Authorities Act of 1945," [now repealed, see 53 Pa. C.S. §5607] as a condition of connection to a township-owned sewer collection, treatment or disposal facility. If any owner of property adjoining or adjacent to or whose principal building is within one hundred and fifty feet from the sanitary sewer fails to connect with and use the sanitary sewer for a period of sixty days after notice to do so has been served by the board of supervisors, either by personal service or by registered mail, the board of supervisors or their agents may enter the property and construct the connection. The board of supervisors shall send an itemized bill of the cost of construction to the owner of the property to which connection has been made, which bill is payable immediately. If the owner fails to pay the bill, the board of supervisors shall file a municipal lien for the cost of the construction within six months of the date of completion of the connection.

Act of May 1, 1933, P.L. 103, as amended, 53 P.S. §67502(a) (emphasis added).

Thus, the Code contemplates two separate factual scenarios requiring connection: (1) location of the sewer line next to a property; and, (2) distance, when a property does not lie adjoining or adjacent to a sewer line. The Township's Mandatory Connection Ordinance tracks the language of the Code. It states:

The Owner of any Improved Property located within [Township] adjoining or adjacent to or whose principal building is within 150 feet from any part of the Sewer System shall connect to such Improved Property and use such Sewer System in such manner as the Township may require within 60 days ….

13

Section 3.01 of the Mandatory Connection Ordinance. <u>See</u> Tr. Ct., Slip Op. at 4 (emphasis added); C.R., Dkt. No. 13-4828, Item No. 4, Ex. A.

We construe ordinances in accordance with principles of statutory construction. <u>Trojnacki v. Bd. of Sup'rs Solebury Twp.</u>, 842 A.2d 503 (Pa. Cmwlth. 2004). "Words and phrases of local ordinances shall be construed according to the rules of grammar and according to their common and approved usage." <u>Id.</u> at 509 (citing 1 Pa. C.S. §103). The term "principal" is commonly defined as: "first, highest, or foremost in importance, rank, worth, or degree; chief." THE AMERICAN HERITAGE DICTIONARY at 985 (2nd College Ed. 1985). The use of the word "principal" connotes a class of one, not more than one. Thus, there may be only one principal structure per property from which the 150-foot radius must be measured.

To the extent the trial court required connection because "one of the principal structures lies well within the 150[-] foot requirement," we disagree with its rationale. Although the trial court focused its analysis on the distance requirement, it acknowledged "[Owners] do not dispute that its [sic] property lies adjacent or adjoining the sewer lines." Tr. Ct., Slip Op. at 4.

The Mandatory Connection Ordinance and the Code are written in the disjunctive, mandating connection if *either* the principal building on a property falls within a 150-foot radius of the connection point, *or* the property is adjoining or adjacent to the sewer main. Thus, only one of these two grounds must be met. Here, the record reveals that both the 15162 Tract and the 15164 Tract are adjacent

14

to the alley where the sewer main is located. See N.T. at 26-27, R.R. at 27a (Owners' witness, Surveyor, testified the laterals are adjoining or adjacent to the Property). Thus, the fact that the distance between the principal structure (or structures) and the laterals may exceed 150 feet is not material to determining whether Owners must connect to the sewer system.[6]

Based on the plain language of the Mandatory Connection Ordinance, the Township is authorized to mandate connection for abutting properties like the Property. Because Owners failed to connect the Property within the 60 days as set forth in the Township Code, the Township was authorized to enter the Property to install connection points. 53 P.S. §67502. Therefore, we affirm the trial court's order mandating connection based on adjacent status of both the 15162 Tract and the 15164 Tract.

However, although we generally uphold the trial court's order requiring connection, and thus resolve the issue as to whether Owners must ultimately connect to the sewer system, we vacate the trial court's requirement that Owners must connect the 15162 Tract within 30 days. On this discrete point, we remand for the trial court to make further determinations as to when Owners must connect. Further determinations are required because the fact-finder could find that the Property

---

[6] Because the Property is compelled to connect based on adjacency, the reasoning from Blair Township Water & Sewer Authority v. Hansen, 802 A.2d 1284 (Pa. Cmwlth. 2002), an eminent domain case predicated on the 150-foot rule, is inapposite. There, the authority took owner's property to install laterals within the 150-foot radius, without which, owners would not have been required to connect. Also, the authority admitted to entering the property without permission, where here, the Authority contends it had a construction easement and Owners' permission as Joseph Karaisz watched.

15

consists of two tracts, that both laterals were installed on the 15164 Tract, and that no lateral has yet been installed on the 15162 Tract. In such a circumstance, immediate connection for the 15162 Tract may not be appropriate.

## 2. Alleged Hardship

As to Owners' contention that they should be exempt from connection due to hardship, we affirm the trial court. First, the Code makes no provision for hardship. Second, to the extent Owners intended to frame their argument in terms of inaccessibility, the trial court did not err in finding their evidence deficient.

This Court holds that perceived difficulty in making a sewer connection is not a ground to remove a property from the scope of a connection ordinance. Bloom v. Commonwealth, 461 A.2d 910 (Pa. Cmwlth. 1983). In Bloom, the property owner argued he should be exempt from connecting to the sewer system because his property was "inaccessible" to the sewer system. Specifically, he asserted that the first floor of his home was at a lower elevation than the sewer line. Therefore, he would need to vertically pump the sewage 5.51 feet to the line, at the risk of a backup of sewage into his living areas. This Court rejected those grounds, emphasizing that the ordinance required connection "in such manner as the township may require." Id. at 912. The need to use a pump for the sewage did not render connection infeasible.

Here, the trial court found the evidence regarding "rock" was insufficient for it to conclude that connection was infeasible. The trial court recognized the other 186 properties in the area, including those of Owners'

16

neighbors, were able to connect without incident.  Also, there was no evidence that any other properties suffered hardship caused by rock.  The trial court reasoned there was no testimony that the alleged "rock" present would impede or prohibit a sewer connection.  The record reflects Owners' witness did not offer any evidence as to the thickness of the rock.  <u>See</u> N.T. at 29-30, R.R. at 28a.  As the trial court's findings are supported by the record, <u>see</u> <u>id.</u> at 49-50, 62, R.R. at 33a, 36a, we agree that Owners did not substantiate inaccessibility to the connection points here.

## B. Lien Action

Having determined Owners are required to connect to the sewer system at some point, we address Owners' remaining contentions that the Authority lacked authorization to file liens for fees related to sewer system connection and use.

### 1. Authority Lacked Authorization

Owners argue the liens filed by the Authority are invalid as they are not authorized by statute.  Specifically, they assert Authority's Resolution No. 2010-22, regarding sewer charges and tapping fees for owners of property served by the sewer system (Resolution), does not authorize tapping fees or user charges because it is based on a "non-statute, the Municipalities Act of 194<u>4</u>." (emphasis in original).  C.R., Dkt. No. 13-4828, Item No. 22, Petition to Strike, 6/27/14, Ex. A at 2.

First, this Court notes the citation in the Resolution to the 194<u>4</u> act appears to be a typographical error.  The reference to the incorrect name is followed by the proper citation for a municipal authority's ability under the now

17

repealed Municipality Authorities Act of 1945 (1945 Act).[7]  A citation error does not nullify the Resolution, or the mandate for the Authority to file the liens.  In re Annexation of Borough of Morrellville to City of Johnstown, 7 Pa. Super. 532 (Pa. Super. 1898), 1898 WL 4366; see also C.K. v. Dep't of Pub Welfare, 869 A.2d 48 (Pa. Cmwlth. 2005) (explaining typographical error in an opinion as to the year was harmless as the year was not material to the decision).  Typographical errors in ordinances do not "invalidate the ordinance as a whole."  Id. at 542, 1898 WL 4366, *5.  This citation error is clearly a typographical error in a manner so obvious "as to preclude every manner of doubt."  Id.

The Authority is empowered to charge the fees that are the subject of the liens pursuant to the current Municipality Authorities Act, 53 Pa. C.S. §§5601-5623.  Pursuant to the Municipality Authorities Act, a municipal authority is permitted to do all acts necessary and convenient to carry out the powers granted to it.  53 Pa. C.S. §5607(d)(17); see also Wenrich v. Pine Grove Joint Treatment Auth. (Pa. Cmwlth., No. 633 C.D. 2012, filed February 12, 2013), 2013 WL 3946502 (unreported).  One of those powers is to advance its purpose of creating, maintaining and regulating a public sewer system.  53 Pa. C.S. §5607(a), (d); Perano.

The Authority is authorized by statute to file liens.  Id.  Indeed, it appears the Resolution intended to cite the current statute as it contains the correct

---

[7] Act of May 2, 1945, P.L. 382, as amended, formerly 53 P.S. §§301-322, repealed by Section 3 of the Act of June 19, 2001, P.L. 287.  The Act of 1945 was repealed and replaced by the current Municipality Authorities Act, 53 Pa. C.S. §§5601-5623.

section.[8] For these reasons, we conclude the Authority had statutory authorization to act as Township's agent and file the liens.

## 2. Lien Procedure

"The [MCTLA] provides for a specific, detailed and exclusive procedure that must be followed to challenge or collect on a municipal lien ...." City of Phila. v. Manu, 76 A.3d 601, 604 (Pa. Cmwlth. 2013). Section 3(a)(1) of the MCTLA authorizes municipalities to file liens on properties that will have priority over all other encumbrances, except taxes, tax liens or tax claims. 53 P.S. §7106(a)(1); see Shapiro v. Center Twp., Butler Cnty., 632 A.2d 994 (Pa. Cmwlth. 1993). Once a lien is recorded, a property owner may challenge the municipal lien through the statutory mechanism.

Under Section 16 of the MCTLA, a property owner may dispute a lien by requesting a lienholder to issue a writ of scire facias. 53 P.S. §7184. A municipality may also pursue a writ of scire facias without the owner filing notice. N. Coventry Twp. v. Tripodi, 64 A.3d 1128 (Pa. Cmwlth. 2013). "After the lienholder issues the writ, the owner may file an affidavit, pursuant to [Section 14 of the MCTLA,] 53 P.S. §7182, raising defenses to the lien, such as actual payment of taxes, a defective claim or lien, fraud, or lack of process or notice." Roethlein v. Portnoff Law Assoc., Ltd., 81 A.3d 816, 818 (Pa. 2013).

---

[8] The Resolution cites "53 P.S. §5607(d)" when it should have cited 53 Pa. C.S. §5607(d) as the proper statutory authority. See Resolution 2010-22 at R.R. 1a.

19

In the instant case, no scire facias writs were issued in the original Lien Action cases (docket numbers with prefix "13"), and Owners did not file the proper process to challenge the liens. Owners took no action for more than nine months after the filing of the liens. In fact, the trial court quashed Owners' petition to strike the liens as improper under the MCTLA, but apparently allowed the petition to strike to continue to the extent it challenged the authority of the Township to mandate connection, which was a prerequisite to the Authority filing liens related to such connection. There is no record of rescission of the prior order quashing the petition to strike.

To the extent there is some question as to whether the trial court addressed the Lien Action on its merits, we note Owners' grounds for challenging the liens were identical to those for challenging the Connection Action. This Court rejects those grounds for the reasons set forth above.

Moreover, we vacate that portion of the trial court's order which denied the petition to strike the liens. We do so for two reasons. First, the petition to strike procedure was improper under the exclusive process of the MCTLA, as the trial court held earlier. Second, it is unclear *when* Owners will be required to connect the 15162 Tract to the new sewer system. In the absence of a current duty to connect to the sewer system, charges flowing from the connection might be questioned. Therefore, the trial court's decision on remand concerning the timing of the mandatory connection could raise a new defense to some of the municipal claims upon which the liens are based.

20

### III. Conclusion

For the foregoing reasons, we affirm in part the trial court's order mandating connection to the sewer system, on other grounds. As to the timing of the connection, we vacate and remand to the trial court to make a finding as to when Owners must connect.

As to the Lien Action, we confirm the trial court's conclusions that the Authority was empowered by statute to file the liens, and that the distance and rock arguments did not invalidate the liens. We also disapprove of Owners' attempt to challenge the liens outside the MCTLA. Therefore, we vacate that portion of the trial court's order which disposed of Owners' improper motion to strike, without prejudice to the trial court's future ability to grant whatever relief may be appropriate under the MCTLA.

On remand, the trial court, in its thoughtful discretion, may encourage further settlement discussions, may accept or refuse new evidence and argument on the timing of mandatory connection, and may entertain applications under the MCTLA.

 

ROBERT SIMPSON, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maxatawny Township, Maxatawny : 
Township Municipal Authority :
 :
v. : No. 68 C.D. 2015
 :
Joseph A. Karaisz and Julie A. Karaisz, :
Appellants :

# O R D E R

**AND NOW**, this 25th day of September, 2015, the order of the Berks County Court of Common Pleas is **AFFIRMED IN PART**, as to mandating connection to the sewer system, **VACATED IN PART** as to the timing of mandatory connection, and **REMANDED** for further fact-finding in accordance with this opinion. That portion of the order denying the Petition to Strike Municipal Liens is **VACATED,** without prejudice, in accordance with this opinion.

Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge